[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15595

_____

D.C. Docket Nos. 1:12-cv-20939-KMW, 11-17047-AJC

In re:

FISHER ISLAND INVESTMENTS, INC.,
LITTLE REST TWELVE, INC.,

Debtors.

_____

JWL ENTERTAINMENT GROUP, INC., et al.,

Plaintiffs,

FISHER ISLAND LIMITED,
GROSVENOR TRADING HOUSE LIMITED,
AREAL GROUP,

Plaintiff -Appellants,

versus

SOLBY+WESTBRAE PARTNERS,
19 SHC, CORP.,
AJNA BRANDS, INC.,

601/1700 NBC LLC,
AXAFINA, INC.,
OXANA ADLER LLM,
Petitioning Creditors,
FISHER ISLAND INVESTMENTS, INC.,
LITTLE REST TWELVE, INC.,

                                            Defendants-Appellees.


                    _____

                          No. 13-15256
                    _____


          D.C. Docket Nos.  1:12-cv-20018-PCH, 11-bkc-17047-AJC



In re: FISHER ISLAND INVESTMENTS, INC.,
        MUTUAL BENEFITS OFFSHORE FUND, LTD.,
        LITTLE REST TWELVE, INC.,

                                            Debtors.

_____

SOLBY WESTBRAE PARTNERS, et al.,

                                            Plaintiffs,

FISHER ISLAND INVESTMENTS, INC.,
MUTUAL BENEFITS OFFSHORE, LTD.,
LITTLE REST TWELVE, INC.,
Zeltser Group,

                                            Movants-Appellants,

                          versus

FISHER ISLAND INVESTMENTS, INC.,

                              2

MUTUAL BENEFITS OFFSHORE FUND, LTD.,
LITTLE REST TWELVE, INC.,
Redmond Group,

Respondents-Appellees.

_____

No. 13-15259

_____

D.C. Docket Nos.  1:12-cv-20939-KMW, 11-bkc-17047-AJC

In Re: FISHER ISLAND INVESTMENTS, INC.,
     LITTLE REST TWELVE, INC.,

Debtors.
_____

JWL ENTERTAINMENT GROUP, INC., et al.,

Plaintiffs,

SOLBY+WESTBRAE PARTNERS,
19 SHC, CORP.,
AJNA BRANDS, INC.,
601/1700 NBC LLC,
AXAFINA, INC.,
Petitioning Creditors, et al.,

Plaintiffs-Appellees,

versus

FISHER ISLAND INVESTMENTS, INC.,
LITTLE REST TWELVE, INC.,

Defendants-Appellants.

_____

No. 14-11700

_____

D.C. Docket Nos.  1:12-cv-20018-PCH, 11-bkc-17047-AJC


In re: FISHER ISLAND INVESTMENTS, INC.,
        MUTUAL BENEFITS OFFSHORE FUND, LTD.,
        LITTLE REST TWELVE, INC.,

Debtors.

_____

SOLBY WESTBRAE PARTNERS, et al.,

Plaintiffs,

MUTUAL BENEFITS OFFSHORE FUND LTD.,
Zeltser Group,

Movant-Appellant,

versus

FISHER ISLAND INVESTMENTS, INC.,
MUTUAL BENEFITS OFFSHORE FUND, LTD.,
LITTLE REST TWELVE, INC.,
Redmond Group,

Respondents-Appellees.

4

_____

No. 14-11771

_____

D.C. Docket Nos.  1:13-cv-22331-KMM, 11-bkc-17051-AJC


In Re: Mutual Benefits Offshore Fund, LTD.,

Debtor.

_____

ZELTSER ALLEGED DEBTOR MUTUAL BENEFITS OFFSHORE FUND
LTD,

Plaintiff-Appellant,

versus

MUTUAL BENEFITS OFFSHORE FUND, LTD.,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(February 20, 2015)

Before HULL, JULIE CARNES, and WALKER,[*] Circuit Judges.

HULL, Circuit Judge:

_____

[*]Honorable John Walker, Jr., United States Circuit Judge for the Second Circuit, sitting
by designation.

5

These consolidated bankruptcy appeals arise out of a dispute between two competing groups—appellee the Redmond Group and appellant the Zeltser Group[1]—over ownership of, and control over, three involuntary debtors: Fisher Island Investments, Inc. ("Fisher Island"), Little Rest Twelve, Inc. ("Little Rest"), and Mutual Benefits Offshore Fund, Ltd. ("Mutual Benefits") (collectively, the "Alleged Debtors").[2]  We refer to this dispute as the "ownership issue."

Litigation of the ownership issue in three bankruptcy cases has yielded five consolidated appeals of four orders: (1) the district court's order denying the Zeltser Group's motion to withdraw reference of the ownership issue; (2) the district court's affirmance of the bankruptcy court's summary judgment order in favor of the Redmond Group in the Fisher Island and Little Rest cases; (3) the district court's order dismissing, for lack of standing, certain non-party appeals from the bankruptcy court's summary judgment order; and (4) the district court's affirmance of the bankruptcy court's final judgment in favor of the Redmond Group in the Mutual Benefits case.

---

[1]The groups are named after the lead attorneys representing them.  The representatives of the Redmond Group include Patricia Redmond of Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. and Martin Russo of Gusrae Kaplan & Nusbaum, PLLC.  The Zeltser Group is represented by Emanuel Zeltser of Sternik & Zeltser and Darin DiBello of DiBello & Lopez, P.A.

[2]Fisher Island is a Florida corporation that manages and owns developable property on Fisher Island, off the coast of Miami Beach in Florida.  Little Rest is a New York corporation that owned and operated Ajna Bar (formerly Buddha Bar) in New York City.  Mutual Benefits is a British Virgin Islands company formerly in the business of selling viatical insurance policies.

6

After careful review of the record and the parties' briefs, and with the benefit of oral argument, we affirm all orders on appeal.

## I.  BACKGROUND

These bankruptcy proceedings are but a small part of global litigation that began with the unexpected death of Arkadi ("Badri") Patarkatsishvili in February 2008.  Badri was an extremely wealthy businessman and one-time presidential candidate from the Republic of Georgia.  The resulting contest between two factions over the ownership and control of Badri's assets, purportedly worth billions of dollars, has spawned litigation in the Republic of Georgia, the United Kingdom, Liechtenstein, the British territory of Gibraltar, and both state and federal courts in the United States.  On one side of this protracted legal battle is the Redmond Group, consisting of Badri's immediate family and led by Badri's widow, Inna Gudavadze.  The other side—the Zeltser Group—is led by Joseph Kay, Badri's distant relative and former employee.

Though complicated by "an ever-shifting labyrinth of corporations, trusts, partnerships, holding companies, and interested individuals," the parties' competing positions on the ownership issue are essentially as follows.  According to the Redmond Group, Fisher Island and Little Rest are owned by the Valmore Trust and Mutual Benefits is owned by the Test Trust—both Gibraltar trusts that were set up for the benefit of Badri and his family.  According to the Zeltser

7

Group, Imedinvest Partners ("Imedinvest"), a partnership formed in the Republic of Georgia, owns Fisher Island, Little Rest, and Mutual Benefits.

The dispute over ownership and control did not begin in the bankruptcy court. In a lawsuit filed by the then-trustee of the Valmore Trust, the Supreme Court of Gibraltar considered whether Badri or Kay was the beneficiary of the Valmore Trust. In 2009, after a nearly two-year proceeding, the Gibraltar Court concluded that the vast majority of the assets in the Valmore Trust were funded by Badri and held for the benefit of Badri's immediate family. After Kay abandoned his appeal of that judgment, the Gibraltar Court declared that Kay had no interest in the assets of the Valmore Trust, which belonged solely to Badri. The Gibraltar Court's decision entailed an implicit finding that the Valmore Trust was valid.

Before the filing of the involuntary petitions in March 2011, the Zeltser Group advanced its theory of ownership in state courts in New York and Florida. In the New York action, attorney Emanuel Zeltser claimed, on behalf of Imedinvest and Joseph Kay, that the Valmore Trust was a "sham" and that Imedinvest, of which Kay was allegedly the managing partner, was the owner of Little Rest. On July 22, 2011, the New York court issued a decision rejecting the sham trust argument on multiple grounds, determining that Zeltser had no authority to represent Little Rest, and substituting attorneys for the Redmond Group as counsel for Little Rest. See Little Rest Twelve, Inc. v. Visan, No. 600676/2007

8

(N.Y. Sup. Ct. N.Y. Cnty. July 22, 2011) (order substituting counsel).  Similarly, attorney Darin DiBello represented Kay in litigating the ownership and representation of Fisher Island in the Florida action.  See Motion to Strike Complaint, Fisher Island Invs., Inc. v. Baker, No. 10-14866 (11th Jud. Cir. of Miami-Dade Cnty., Fla. Mar. 15, 2010).

## II.  BANKRUPTCY COURT PROCEEDINGS

### A.    Involuntary Petitions

On March 17, 2011, a group of six individuals and entities—Solby+Westbrae Partners; 19 SHC, Corp.; Ajna Brands, Inc.; 601/1700 NBC, LLC; Axafina, Inc.; and Oxana Adler (collectively, the "Petitioning Creditors")—filed three separate involuntary Chapter 11 bankruptcy petitions in the U.S. Bankruptcy Court for the Southern District of Florida against Fisher Island, Little Rest, and Mutual Benefits.  The involuntary petitions were filed as the parties anticipated key rulings on the ownership issue in the New York and Florida litigations.

The involuntary petitions asserted claims against the Alleged Debtors for approximately $32.4 million, $28.5 million of which was based on a promissory note (the "Note") purportedly executed by the Alleged Debtors and assigned to three of the Petitioning Creditors by a non-party, Areal Plus Group.  The Petitioning Creditors, asserting that the Alleged Debtors were "affiliates," moved

9

the bankruptcy court to jointly administer the three cases and to appoint a trustee to take control and possession of the Alleged Debtors' assets.

## B.    Ownership Issue

Two sets of attorneys—representing the Zeltser Group and the Redmond Group, respectively—entered appearances of record in the bankruptcy court, both purporting to act on behalf of the Alleged Debtors.  On March 21, 2011, four days after the involuntary petitions were filed, the Zeltser Group, through attorney DiBello, filed answers on behalf of the Alleged Debtors, immediately admitting to the allegations in the involuntary petitions against the Alleged Debtors and consenting to the relief requested by the Petitioning Creditors.

The next day, the Redmond Group, through attorney Redmond, filed an emergency motion to strike the Zeltser Group's answers.  The Redmond Group, claiming to be the actual authorized representatives of the Alleged Debtors, alleged that the involuntary petitions were improperly filed in an attempt to stay the state court litigation in Florida and New York.  To adjudicate the underlying debt, the bankruptcy court had to decide who owned the Alleged Debtors, and thus who had the authority to retain counsel.

In response to the motion to strike, the Zeltser Group asked the bankruptcy court to deny the relief sought therein until resolving the question of who had the authority to act on behalf of the Alleged Debtors.  Notably, the Zeltser Group

10

stated in its response that "the issues of proper ownership and control over the Alleged Debtor[s] should be litigated in due course before this Court."

Faced with these contradictory claims, the bankruptcy court held a hearing on March 25, 2011. The bankruptcy court noted that it was highly unusual that the Alleged Debtors, as represented by the Zeltser Group, immediately consented to the involuntary petitions. As to the ownership issue, attorney Zeltser contended that Imedinvest, a "loose investment partnership" owned all three of the Alleged Debtors. According to Zeltser, Badri had been a partner of Imedinvest, and it was on behalf of Imedinvest and other entities that the Note debt had been incurred.

Counsel for the Redmond Group denied that Imedinvest had any ownership interest in the Alleged Debtors. Instead, the Redmond Group asserted that the Valmore Trust ultimately owned Fisher Island and Little Rest through its trustee, Miselva Establissement ("Miselva"). The Redmond Group also asserted that Mutual Benefits was comprised of several investors, the largest of which was Kayley Investments, N.V. ("Kayley"). In turn, Kayley was legally owned by the Test Trust.

During the hearing, the Zeltser Group specifically requested that the bankruptcy court decide the ownership issue. Attorney Zeltser claimed that the New York and Florida state courts could not determine ownership, and informed the bankruptcy court that it, as the "ultimate Court of equity," was the "only court"

11

that could resolve the issue.  Furthermore, the bankruptcy court's decision on the issue, presumably after a short "ownership hearing," would be "dispositive."

The Redmond Group later filed answers and motions to dismiss on behalf of the Alleged Debtors, denying the allegations in the involuntary petitions, raising affirmative defenses, and seeking dismissal of the petitions as filed in bad faith. Thus, whether the petitions were contested depended on a threshold determination of which group was authorized to represent the Alleged Debtors in the proceedings.

## C.    Discovery and Examiner's Report

On March 31, 2011, the bankruptcy court granted in part the Petitioning Creditors' motion to jointly administer the three cases.  Although the bankruptcy court doubted how the "three widely disparate business operations" were affiliates, it granted the motion "for the sole purpose of conducting one trial regarding the validity of the . . . Note, the assignment of the Note and determination of who are the legitimate representatives and attorneys for the three alleged involuntary debtors."  The bankruptcy court also appointed a Chapter 11 Examiner to investigate the ownership issue, among other things.[3]

---

[3]The bankruptcy court remarked that the involuntary petitions raised a smell, pointing to irregularities such as the timing of the involuntary petitions in relation to the state court litigation, the timing of the answers consenting to the relief sought in the petitions, the questionable authenticity of the Note, and the highly unusual situation of two groups vying to represent alleged debtors.

At the bankruptcy court's direction, the parties conferred regarding discovery and pre-trial procedures and agreed to a case management order. On June 7, 2011, the bankruptcy court issued the agreed "Case Management and Schedule Order in <u>Contested Matter</u> Setting Filing and Disclosure Requirements for Pre-Trial and Trial" (the "Schedule Order") (emphasis added). Notably, the Schedule Order provided for extensive discovery, including mandatory disclosures of witnesses and documents, interrogatories, requests for admission, document requests, depositions, and expert reports. The Schedule Order directed the parties to submit findings of fact rather than jury instructions, and noted that the bankruptcy court would set a trial date for "this contested matter" at the pre-trial conference.

On November 18, 2011, the Examiner issued a 96-page report addressing the ownership of the Alleged Debtors and the claims of the Petitioning Creditors. The Examiner found that the Valmore Trust was the ultimate owner of both Fisher Island and Little Rest. As to Mutual Benefits, the Examiner found that Kayley was ultimately owned by the Test Trust. Accordingly, the attorneys for the Redmond Group (not the Zeltser Group) were authorized to represent the Alleged Debtors.

The Examiner explained that the ownership dispute with respect to Mutual Benefits was different from Fisher Island and Little Rest in that Mutual Benefits was never held within the Valmore Trust. The Examiner's review indicated that

13

W. Shaun Davis, through his management company, Triangle International Management Limited ("Triangle"), owned 100% of Mutual Benefits' voting shares. All of Mutual Benefits' other shareholders, including Kayley, held non-voting shares. Mutual Benefits was therefore controlled by its voting shareholder, Triangle.

The Examiner generally found the Zeltser Group's story with respect to ownership to be inconsistent and irreconcilable with, or unsupported by, the record. For instance, the Zeltser Group provided little extrinsic evidence to prove the existence of Imedinvest. In fact, Joseph Kay and his sister testified in connection with the Gibraltar proceeding in 2009 that they were unfamiliar with Imedinvest. The Examiner also determined that the Zeltser Group had submitted certain documentation in "an intentional effort to mislead or misrepresent material facts to a court."

After several months of extensive discovery in accordance with the Schedule Order (as well as extensions), which produced more than 200,000 pages of documents, the record was closed on November 30, 2011.

**D.    Summary Judgment in Fisher Island and Little Rest Cases**

1.    Motion for Partial Summary Judgment

Notwithstanding the Examiner's unfavorable report, on November 21, 2011, the Zeltser Group moved for partial summary judgment on the ownership issue in

14

the Fisher Island and Little Rest cases.[4]  The Zeltser Group sought a determination that: (1) the Valmore Trust was invalid; (2) neither Gibraltar law nor United Kingdom law applied to the proceedings; and (3) JWL Entertainment Group, Inc. ("JWL"), a Delaware corporation, was the equitable owner of Fisher Island and Little Rest.

The Zeltser Group's ownership theory was twofold.  First, the Valmore Trust[5] was a "sham" and invalid because Kay, and not Badri, was the settlor and beneficiary.  Alternatively, Fisher Island Limited ("Fisher Limited") and Grosvenor Trading Holding Limited ("Grosvenor"), which the Zeltser Group acknowledged were the respective parent companies of Fisher Island and Little Rest, were transferred from trustee Miselva to JWL.  JWL was then transferred out of the Valmore Trust to Imedinvest.  The Zeltser Group argued that, pursuant to these transactions, JWL held equitable ownership of Fisher Island and Little Rest. Paradoxically, the Zeltser Group maintained that the bankruptcy court lacked jurisdiction to resolve any issue regarding the JWL transactions.

In opposition to the partial summary judgment motion, the Redmond Group argued that the Gibraltar Court's judgment precluded the bankruptcy court from

_____

[4]As discussed below, see infra Part III.A, the Zeltser Group also moved to withdraw reference of the bankruptcy proceedings to the district court for adjudication of the ownership issue.

[5]In the motion, the Zeltser Group acknowledged the Redmond Group's assertion that SP Trustees Gmbh ("SP Trustees") was the successor to Miselva, the then-trustee of the Valmore Trust.

determining the validity of the Valmore Trust.  The Gibraltar Court's factual findings, including its implicit finding that the Valmore Trust was valid, were entitled to comity, and a New York state court specifically declined to find that the Valmore Trust was a sham.  Furthermore, the JWL transaction was abandoned.  Even assuming the transaction was completed, Miselva was still the legal and beneficial owner of Fisher Limited and Grosvenor, as indicated in an unrebutted expert opinion submitted by the Redmond Group.  The Zeltser Group did not file a reply.

2.    Motion for Clarification/Reconsideration

On November 30, 2011, the Zeltser Group filed a motion for clarification and/or reconsideration of the June 7, 2011 Schedule Order.  The Zeltser Group argued, for the first time in the proceedings, that the bankruptcy court could not adjudicate the ownership issue (1) without joinder of all indispensable parties, and (2) without violating due process because the ownership issue was raised as a contested matter in the Redmond Group's motion to strike rather than as an adversary proceeding.  The motion listed a string of individuals and entities that were allegedly involved in the ownership chain and therefore "indispensable," including the Valmore Trust, Miselva, JWL, Fisher Limited, Grosvenor, Badri's widow, and Imedinvest.

16

The bankruptcy court denied the motion for clarification/reconsideration, finding that any objection should have been raised contemporaneously with entry of the agreed-upon Schedule Order, not several months after-the-fact.

3.    Denial of Partial Summary Judgment

On December 29, 2011, the bankruptcy court denied the Zeltser Group's motion for partial summary judgment. In the "Procedural History" section of the order, the bankruptcy court discussed the appointment of the Examiner and the production of the Examiner's report. The bankruptcy court then set forth the material facts concerning the formation and operation of the Valmore Trust, as well as the Gibraltar and New York litigations. The "Material Facts" section made no mention of the Examiner or his report. Based on these material facts, the bankruptcy court rejected the argument that the Valmore Trust was a sham and declined to reverse any findings made by the Gibraltar Court. Furthermore, the bankruptcy court determined that the JWL transaction was abandoned and that pursuant to the unrebutted expert opinion submitted by the Redmond Group, neither legal nor beneficial ownership of Fisher Limited or Grosvenor passed to JWL.

The bankruptcy court stated that, pursuant to Federal Rule of Bankruptcy Procedure 7056(f), it was "inclined to determine as a matter of law" that Miselva (then trustee of the Valmore Trust) owned Fisher Limited and Grosvenor. The

17

parties did not dispute that Fisher Limited owned Fisher Island and Grosvenor owned Little Rest.  Thus, the bankruptcy court was in effect notifying the parties that it intended to rule that the Valmore Trust owned Alleged Debtors Fisher Island and Little Rest.  Nevertheless, the bankruptcy court gave the Zeltser Group an additional 21 days to file a legal memorandum, "based on the existing record," to persuade the court not to enter summary judgment as indicated.

Despite this invitation by the bankruptcy court, the Zeltser Group declined to file any additional memorandum addressing the ownership issue.  Instead, the Zeltser Group objected to the "confines imposed" with respect to the permitted memorandum and advised the bankruptcy court that it would "rely on the existing record."  The Zeltser Group did not explain what additional discovery it believed was necessary or what it would prove if given the opportunity to expand the record.

During a hearing on January 5, 2012, the bankruptcy court granted the Redmond Group's oral motion to prepare a proposed memorandum opinion regarding the entry of summary judgment and instructed both the Redmond Group and the Zeltser Group to do so within five days.  The Petitioning Creditors (joined by the Zeltser Group) moved for reconsideration of this ruling, arguing that the Redmond Group intended to include in its proposed opinion new findings and

conclusions not present in the bankruptcy court's December 29, 2011 denial of partial summary judgment.

On January 10, 2012, the bankruptcy court denied the Petitioning Creditors' motion for reconsideration as without merit.  The bankruptcy court stated that it had no intention of entering an order that supplemented the record.  Summary judgment would not be entered on allegedly "new or different" grounds but "rather on the very same undisputed facts and legal grounds" on which the bankruptcy court denied the Zeltser Group's motion for partial summary judgment.

4.    Bankruptcy Court's Summary Judgment Order

On January 20, 2012, the bankruptcy court, sua sponte, entered an order granting summary judgment in favor of the Redmond Group in the Fisher Island and Little Rest cases, as the court had indicated it was inclined to do.  The bankruptcy court noted that, despite being given the opportunity to do so, the Zeltser Group chose not to raise any issues of disputed fact or otherwise point to specific record evidence potentially raising a disputed factual issue.  The bankruptcy court also noted that SP Trustees had replaced Miselva as trustee of the Valmore Trust.

After reviewing the record and drawing all reasonable inferences in favor of the Zeltser Group, the bankruptcy court found, as a matter of law, that Fisher Limited, Grosvenor, and their respective subsidiaries (including Fisher Island and

19

Little Rest) were assets of the Valmore Trust.  Final summary judgment was entered as follows: the Valmore Trust, through its trustee (currently SP Trustees) owned (1) 100% of Fisher Limited, which (through an intermediary) owned 100% of Fisher Island, and (2) 100% of Grosvenor, which owned 85% of Little Rest, with the remaining 15% of Little Rest owned by an individual not directly involved in the ownership dispute.

Three groups appealed the bankruptcy court's January 20, 2012 summary judgment order to the district court: (1) the Zeltser Group (still purporting to represent Fisher Island and Little Rest), (2) the Petitioning Creditors, and (3) five non-party entities affiliated with the Zeltser Group, including Fisher Limited, Grosvenor, and Areal Group ("Areal")[6] (collectively, the "non-party appellants"). These appeals were consolidated by U.S. District Court Judge Kathleen Williams.

## E.    Trial in Mutual Benefits Case

### 1.    Denial of Summary Judgment

On February 13, 2012, the Redmond Group moved for summary judgment on the ownership issue in the Mutual Benefits case.  The Redmond Group sought a determination that Mutual Benefits was owned by 24 investors, and that the Test Trust was the ultimate owner of Kayley, the largest investor of Mutual Benefits. The Zeltser Group responded, inter alia, that the bankruptcy court lacked authority

---

[6]Areal is apparently a wholly owned subsidiary of Areal Plus Group, the assignor of the Note, as well as a creditor and former partner of Imedinvest.

20

to make a final determination as to ownership, and could not make any such determination without joinder of all the alleged owners of Mutual Benefits (i.e., the investors).

On August 28, 2012, the bankruptcy court denied the Redmond Group's motion, finding that genuine issues of material fact raised by the Zeltser Group's response precluded summary judgment. The bankruptcy court subsequently set the matter for a two-day bench trial, to begin on April 11, 2013—over two years after the case was filed.

2.    Pre-Trial and Motion for Continuance

In October 2012, the parties filed their lists of intended witnesses and exhibits. The Zeltser Group named 36 witnesses it intended to call at trial as part of its case-in-chief, including Galina Orlowskaya, Natasha Bransburg, and Petitioning Creditor Oxana Adler,[7] and identified hundreds of exhibits. The bankruptcy court ordered the parties to submit sworn declarations of their intended witnesses' direct testimony at least 10 days before trial. In response, the Redmond Group filed the declaration of W. Shaun Davis, the president and sole director of Mutual Benefits. The Zeltser Group filed the declaration of Oxana Adler.

---

[7]Adler, who is apparently an attorney licensed in Russia, told the Examiner that she has represented Imedinvest and its affiliates (including Badri and the Alleged Debtors) for more than 14 years. The claims she asserted in the involuntary petitions arose out of legal services allegedly provided to the Alleged Debtors.

On April 1, 2013, the Zeltser Group filed a motion for an extension of time to file the direct testimony declarations of Orlowskaya and Bransburg and for a 60-day continuance of the trial. According to the Zeltser Group, Orlowskaya and Bransburg did not want to give their testimony at that time because they were concerned for their personal safety in light of the March 23, 2013 death of Russian businessman Boris Berezovsky. The motion did not specify any connection between the witnesses and Berezovsky, or otherwise explain the relevance of his death to the Mutual Benefits bankruptcy proceeding.[8] The bankruptcy court denied the motion for continuance.

3.    Trial

Trial began as scheduled on April 11, 2013. The Redmond Group called Davis to testify in person and through his previously filed declaration. Davis testified as follows. He was the owner of Meridian Asset Management Ltd., which owned 99% of Triangle, which in turn owned all of the voting shares in Mutual Benefits. Davis was appointed as the president and sole director of Mutual Benefits in 2002 and continues to serve in that capacity. Kayley and 22 other

---

[8]The Zeltser Group later submitted sworn declarations by Orlowskaya, Bransburg, and Adler, which stated that they had received threats of bodily harm from individuals associated with the Redmond Group. Adler vaguely declared that she believed Berezovsky's death to be "intrinsically connected to his claims to assets [at issue] in the proceedings." According to the Zeltser Group's appellate briefs in this Court, Berezovsky is associated with Badri's widow, Gudavadze.

investors held non-voting shares in Mutual Benefits, which only entitled them to an economic interest in the profits and did not confer any voting power.

Davis testified that he retained the Redmond Group attorneys in the bankruptcy case and that the Zeltser Group attorneys were not authorized to represent Mutual Benefits. Davis's testimony was corroborated by various exhibits, many of which were admitted into evidence without objection.

Attorney Zeltser then cross-examined Davis for four hours. Zeltser attempted to establish that Mutual Benefits defrauded its investors and that Davis was merely a "nominee" without any decision making power. Davis denied both propositions.

At the close of the Redmond Group's case-in-chief, the Zeltser Group orally moved for judgment on partial findings under Federal Rule of Civil Procedure 52(c) and for involuntary dismissal under Federal Rule of Civil Procedure 41(b). The Zeltser Group argued that the Redmond Group failed to meet its burden of establishing who owned Mutual Benefits based on Davis's testimony—the sole evidence presented by the Redmond Group. The bankruptcy court found that the Redmond Group had presented a prima facie case and denied both motions. In doing so, the bankruptcy court reasoned that "a motion on Rule 52(c) or Rule 41 is in some way similar to a summary judgment motion; that is, it is not a time for

making credibility choices.  It is a time to determine whether there is evidence, if accepted, that . . . can constitute a prima facie case."

The Zeltser Group also renewed its motion for a continuance of the trial, citing the unavailability of Orlowskaya, Bransburg, and Adler.  The bankruptcy court ruled that Orlowskaya and Bransburg would be allowed to testify at a continued trial date on April 27, 2013, if they were produced for depositions by April 18, 2013.  However, the bankruptcy court refused to extend this limited continuance to Adler.  The bankruptcy court stated that Adler's extensive involvement in the case was a matter of public record and declined to give Adler "any further consideration" if "she chose not to be here today."

The bankruptcy court ordered the Zeltser Group to proceed with its case-in-chief.  Despite having submitted exhaustive lists of witnesses and exhibits, the Zeltser Group did not call any witnesses or offer any exhibits at trial.  Instead, attorney DiBello informed the bankruptcy court that the Zeltser Group had nothing to present except for the testimony of Orlowskaya, Bransburg, and Adler.  Because Orlowskaya and Bransburg did not appear for deposition by April 18, 2013, they were barred from testifying at all.  The trial record was closed without any evidence proffered by the Zeltser Group.

4.    Bankruptcy Court's Final Judgment

On April 25, 2013, the bankruptcy court entered its findings of fact and conclusions of law in favor of the Redmond Group.  The court found the Redmond Group's testimonial and documentary evidence to be credible and persuasive, whereas the Zeltser Group failed to submit any evidence to support an alternative theory of ownership.

The bankruptcy court found that Triangle owned the controlling "Managers Shares" of Mutual Benefits.  As the controlling shareholder, Triangle appointed Davis as president and sole director of Mutual Benefits.  Davis had the exclusive authority to retain counsel to represent Mutual Benefits, and, pursuant to that authority, Davis retained the Redmond Group's attorneys in the involuntary bankruptcy proceeding.  Accordingly, the bankruptcy court granted the Redmond Group's motion to strike the Zeltser Group's answer and set the Redmond Group's motion to dismiss the involuntary petition for a hearing.

Pursuant to its findings of fact and conclusions of law, the bankruptcy court entered a separate final judgment in favor of the Redmond Group.  The final judgment determined that the Zeltser Group was not authorized to represent Mutual Benefits in the bankruptcy proceeding.  The Zeltser Group (still purporting to represent Mutual Benefits) timely appealed the April 25, 2013 final judgment to the district court.

25

On appeal, the district court granted the Redmond Group's motion for leave to supplement the record, which attached deposition testimony from Bransburg in which she admitted that she did not know anything about Mutual Benefits and that she never had any relevant testimony to give at trial.

### III.  DISTRICT COURT PROCEEDINGS

**A.    District Court's Denial of Motion to Withdraw Reference of Ownership Issue**

On November 30, 2011, the Zeltser Group moved to withdraw reference of the ownership issue, pursuant to 28 U.S.C. § 157(d), in each bankruptcy case. Remarkably, the motion to withdraw reference was filed on the same day as the Zeltser Group's motion for clarification and/or reconsideration of the bankruptcy court's Schedule Order, within two weeks of the unfavorable Examiner's report and the Zeltser Group's partial summary judgment motion filed in the Fisher Island and Little Rest cases, and five months after the Supreme Court's June 23, 2011 decision in Stern v. Marshall, 564 U.S. __, 131 S. Ct. 2594 (2011).

Notwithstanding its earlier conduct and express representations before the bankruptcy court, the Zeltser Group now objected to the bankruptcy court's adjudication of ownership.  According to the Zeltser Group, the bankruptcy court lacked authority to enter a final determination on the ownership issue under Stern. The Zeltser Group pointed to the distinction between core bankruptcy proceedings, which either "arise under" title 11 (the Bankruptcy Code) or "arise in" a case under

26

title 11, and non-core proceedings to support its jurisdictional argument. Because the district court has the exclusive authority to decide the ownership issue, the Zeltser Group requested that the reference to the bankruptcy court be withdrawn to the extent the bankruptcy court was going to rule on the issue as a contested matter.

The district court held two hearings on the Zeltser Group's motion to withdraw reference. During the first hearing, the Zeltser Group denied that the ownership issue was a core matter. During the second hearing, however, the Zeltser Group acknowledged that the ownership issue was "core" and that it had originally consented to a trial in the bankruptcy court before the Stern decision. Nonetheless, the Zeltser Group argued that it was entitled to a trial in an Article III court as a result of Stern.

On January 31, 2012, U.S. District Court Judge Paul Huck issued a consolidated order denying the Zeltser Group's motion to withdraw reference, which he characterized as a "belated change of heart." District Court Judge Huck found that the ownership issue fell within the bankruptcy court's core jurisdiction as a proceeding "arising under title 11, or arising in a case under title 11," and the Stern decision had no impact on the bankruptcy court's authority. Unlike the state law counterclaim at issue in Stern, the ownership issue was "deeply embedded" in the case. The bankruptcy court was "necessarily required to determine who the

27

real owners of the Alleged Debtors actually [were] in order to rule on the creditors' claims." Even assuming the relevance of <u>Stern</u>, the Zeltser Group "explicitly, unquestioningly, and expressly consented to a non-jury trial" in the bankruptcy court on the ownership issue and clearly waived any right it may have had to a trial before an Article III judge.

**B.    District Court's Affirmance of Summary Judgment in Fisher Island and Little Rest Cases**

On October 16, 2013, District Court Judge Williams affirmed the bankruptcy court's January 20, 2012 summary judgment order in favor of the Redmond Group. As an initial matter, District Court Judge Williams concluded that the Zeltser Group waived many of the issues on appeal by failing to raise them in response to the bankruptcy court's invitation to submit legal briefing on its intended summary judgment order.[9]

First, District Court Judge Williams rejected the Zeltser Group's argument that it lacked sufficient notice of the summary judgment order. She concluded that the bankruptcy court's December 29, 2011 denial of the Zeltser Group's partial summary judgment motion gave the Zeltser Group more than adequate notice of the bankruptcy court's intention to enter summary judgment on the ownership of

---

[9]District Court Judge Williams stated that the Zeltser Group's "refusal to raise these arguments in the time and manner ordered by the Bankruptcy Court did, in fact, constitute a waiver, which cannot be avoided by [the Zeltser Group] asserting that they do not want it to be a waiver."

28

Fisher Island and Little Rest, as well as 21 days to submit further briefing on the issue.

Second, the district court concluded there were no procedural defects in the entry of summary judgment because the parties had a full and fair opportunity to develop the (ample) record, and the Zeltser Group never indicated that further discovery was needed. Third, the district court concluded that even assuming arguendo that the Zeltser Group did not waive the issue, the bankruptcy court did not improperly rely on the Examiner's report, which was not mentioned anywhere in the summary judgment order. Fourth, the district court found that the Zeltser Group waived its argument concerning joinder. In any event, the district court concluded, the bankruptcy court did not err in deciding the threshold ownership issue in the absence of asserted "indispensable" parties.

Fifth, the district court concluded, again assuming that the Zeltser Group did not waive the issue, that the bankruptcy court did not err in allowing the ownership issue to proceed as a contested matter rather than as an adversary proceeding. Even if the bankruptcy court erred, the district court reasoned, the Zeltser Group invited the error by encouraging the bankruptcy court to determine the ownership issue and litigating the issue as a contested matter for months before finally objecting. Sixth, the district court held that because there were no genuine disputes of material fact as to whether the Valmore Trust owned Fisher Island and Little

29

Rest, the bankruptcy court properly granted summary judgment based on the record.

The Zeltser Group, purportedly on behalf of Fisher Island and Little Rest, timely appealed District Court Judge Williams's October 16, 2013 order to this Court.

**C.    District Court's Dismissal of Appeals by Non-Party Appellants**

The Redmond Group moved to dismiss the Petitioning Creditors' and the non-party appellants' appeals for lack of standing to challenge the bankruptcy court's January 20, 2012 summary judgment order.

Relevant to these appeals, non-party appellants Fisher Limited and Grosvenor responded that they were aggrieved by the bankruptcy court's summary judgment order, which "awarded" their ownership interests to SP Trustees and "eviscerated" their property rights. The four exhibits attached to their response consisted entirely of pleadings from the New York state case involving the ownership of Little Rest.

Non-party appellant Areal, represented by the same attorney who filed the involuntary petitions on behalf of the Petitioning Creditors, also filed a memorandum and exhibit in response. To show the existence of a pecuniary interest sufficient to confer standing, Areal relied solely on a March 24, 2004 pledge agreement in which it purportedly invested $12 million in Little Rest. The

pledge agreement referred to other documents that were not submitted by Areal in its response.

The Redmond Group filed a reply brief on June 11, 2012, challenging the authenticity and legitimacy of Areal's sole exhibit.  The Redmond Group submitted reports by two forensic handwriting experts who opined that the signatures on the pledge agreement were not "independent creations" but rather were transferred from another source.  The Redmond Group also submitted a sworn declaration from Little Rest's financial controller, who stated that he had never seen the agreement before and that it was not kept in the course of ordinary business.  Areal did not seek leave to file a sur-reply brief or request an evidentiary hearing.

On October 23, 2012, District Court Judge Williams granted the Redmond Group's motions to dismiss and dismissed all appellants of the bankruptcy court's January 20, 2012 summary judgment order except for the Zeltser Group.

District Court Judge Williams found that Areal failed to satisfy the two prerequisites for standing to appeal.  First, Areal was not aggrieved by the summary judgment order under the "person aggrieved" doctrine applicable to bankruptcy appeals.  Areal did not submit any affidavits or declarations authenticating the pledge agreement, which was neither witnessed nor notarized and did not appear to be a standard legal document.  The district court noted that

31

the pledge agreement bore an upside down corporate seal, which also indicated digital manipulation. Furthermore, the agreement provided only that Areal "contemplates" investing $12 million in Little Rest—Areal did not offer any evidence that the funds were actually transferred. On the other hand, the Redmond Group submitted two forensic reports and a sworn declaration to rebut the authenticity of the pledge agreement. Accordingly, the district court concluded that the only document on which Areal relied had not been sufficiently authenticated.

Second, the district court concluded that although Areal was given proper notice of the bankruptcy proceedings, it failed to appear and object to the entry of summary judgment in the bankruptcy court. Similarly, the district court held that Fisher Limited and Grosvenor lacked standing because they failed to appear and object to the entry of summary judgment in the bankruptcy court, despite their attorneys having actual notice of the bankruptcy proceedings from the outset.

District Court Judge Williams rejected the non-party appellants' argument that their failure to attend or object should be excused because they did not receive "proper" notice of the bankruptcy proceedings due to the Redmond Group's failure to initiate the requisite adversary proceeding. District Court Judge Williams found that this argument was not properly preserved, and that the Redmond Group was not required to file an adversary proceeding to raise the ownership issue instead of

32

the Redmond Group's motion to strike the Zeltser Group's answers to the involuntary petitions. Even assuming there was such a requirement, the district court concluded that the Redmond Group's failure to do so would not excuse the non-party appellants' decision to deliberately wait to appear and object until after entry of the bankruptcy court's adverse summary judgment order. To conclude otherwise "would not only encourage litigation by ambush, but it would reward conduct that . . . is, at best, an attempt to game the system and, at worst, a coordinated effort to perpetrate a fraud on this Court."

At this point, in the district court, the only remaining parties were the Zeltser Group, as appellant, and the Redmond Group, as appellee, of the bankruptcy court's January 20, 2012 order on the ownership of Fisher Island and Little Rest. The non-party appellants timely appealed District Court Judge Williams's October 23, 2012 dismissal of their bankruptcy appeals to this Court.

## D.    District Court's Affirmance of Final Judgment in Mutual Benefits Case

On March 19, 2014, U.S. District Court Judge K. Michael Moore affirmed the bankruptcy court's April 25, 2013 judgment in favor of the Redmond Group.

The district court reached the following conclusions. First, the bankruptcy court had jurisdiction and authority to enter final judgment on the ownership issue. District Court Judge Moore agreed with District Court Judge Huck's finding that the ownership issue, which had to be resolved before the bankruptcy court could

33

adjudicate the underlying debt, clearly "arises under" or "arises in" a case under Chapter 11.  Second, the bankruptcy court had all necessary parties before it to enter final judgment on the ownership issue as to the named Alleged Debtors. Even if mandatory joinder applied in contested matters, the Zeltser Group failed to meet its burden that the non-parties were both necessary and indispensable.

Third, the bankruptcy court did not err in allowing the ownership issue to proceed as a contested matter raised in the Redmond Group's motion to strike the Zeltser Group's answers to the involuntary petitions, rather than proceeding as a separate adversary proceeding.  Fourth, the bankruptcy court did not abuse its discretion in denying the Zeltser Group's motion for a continuance.  The Zeltser Group did not act diligently in preparing for trial, and there was no reason to believe that granting the continuance would have remedied the asserted reason for the witnesses' unavailability.

Fifth, the bankruptcy court's final judgment was not clearly erroneous.  The evidence at trial established that Triangle owned all of Mutual Benefits' voting shares, and that Davis, as the president and sole director of both Triangle and Mutual Benefits, retained the Redmond Group's attorneys to represent Mutual Benefits.  Sixth, the bankruptcy court did not err in denying the Zeltser Group's Rule 52(c) motion for judgment on partial findings and Rule 41(b) motion for involuntary dismissal.

The Zeltser Group, purportedly on behalf of Mutual Benefits, timely appealed District Court Judge Moore's March 19, 2014 order to this Court.

## E.    Eleventh Circuit Appeals

As detailed above, these bankruptcy proceedings culminated in separate appeals in this Court.  On June 24, 2014, this Court consolidated, sua sponte, the appeals for purposes of disposition before a single oral argument panel after completion of briefing.

## IV.  STANDARD OF REVIEW

"In a bankruptcy case, this Court sits as a second court of review and thus examines independently the factual and legal determinations of the bankruptcy court and employs the same standards of review as the district court."  Brown v. Gore (In re Brown), 742 F.3d 1309, 1315 (11th Cir. 2014) (quotation marks omitted).  Where the district court affirms the bankruptcy court's order, we review the bankruptcy court's decision.  Id.  We review the bankruptcy court's factual findings for clear error and its legal conclusions de novo.  Id.

The district court's legal determinations are also reviewed de novo.  See Dionne v. Simmons (In re Simmons), 200 F.3d 738, 741 (11th Cir. 2000).

## V.  BANKRUPTCY COURT'S AUTHORITY

### A.    Arguments on Appeal

The Zeltser Group argues that the district court erred in denying its motion to withdraw reference of the Alleged Debtors' Fisher Island and Little Rest cases because the bankruptcy court lacked constitutional authority under Stern to enter final judgment on the ownership issue, which is who owned the Alleged Debtors and who was entitled to represent them.  The Zeltser Group contends that an objection to a bankruptcy court's constitutional authority under Stern's interpretation of 28 U.S.C. § 157 cannot be waived, and that its voluntary pre-Stern participation in pretrial proceedings did not constitute either express or implied consent to a non-jury trial before the bankruptcy court.  Furthermore, the Zeltser Group contends that the district court erred in concluding that the bankruptcy court was necessarily required to resolve the ownership issue to rule on the merits of the creditors' claims.

As to Mutual Benefits specifically, the Zeltser Group argues that Stern deprived the bankruptcy court of the constitutional authority to enter a final judgment on the non-core issue of Mutual Benefits' ownership, as opposed to a factual finding made to determine the interlocutory issue of who was authorized to retain counsel for Mutual Benefits.

## B.    Bankruptcy Court's Statutory Authority under § 157

Section 157 of the Judicial Code divides all matters that may be referred to the bankruptcy court into two categories: (1) core proceedings (those that "aris[e] under title 11" or "aris[e] in a case under title 11") and (2) non-core proceedings (those that are not core but are "otherwise related to a case under title 11").  28 U.S.C. § 157(b)(1) , (3).  Section 157(b)(2) sets forth a non-exhaustive list of sixteen types of core proceedings, including, in relevant part, "matters concerning the administration of the estate" and "other proceedings affecting . . . the adjustment of the debtor-creditor . . . relationship."  Id. § 157(b)(2)(A), (O).

The manner in which a bankruptcy court may act depends on the type of proceeding.  In all core proceedings, bankruptcy courts have the authority to hear and enter final judgments.  Id. § 157(b)(1).  In non-core proceedings, a bankruptcy court may only submit proposed findings of fact and conclusions of law to the district court, which then may enter final judgment after de novo review.  Id. § 157(c)(1).  However, even in non-core proceedings, the parties may consent to entry of final judgment by the bankruptcy court.  Id. § 157(c)(2).

## C.    **Stern v. Marshall**

On June 23, 2011, the Supreme Court issued its decision in Stern v. Marshall, which involved a voluntary bankruptcy proceeding.  A creditor filed a defamation claim in the debtor's voluntary bankruptcy proceeding, and the debtor

filed a state law counterclaim for tortious interference against the creditor. The bankruptcy court determined the tortious interference counterclaim to be a core proceeding under the plain language of § 157(b)(2)(C), which lists "counterclaims by the estate against persons filing claims against the estate" as one of the sixteen named types of core proceedings. The bankruptcy court then entered final judgment in the debtor's favor on both the creditor's defamation claim and the debtor's tortious interference counterclaim. See Stern, 564 U.S. at __, 131 S. Ct. at 2601-02.

The Supreme Court determined that, while the bankruptcy court had statutory authority under § 157(b) to enter final judgment on the counterclaim, it violated Article III of the Constitution for Congress to confer that statutory authority onto the bankruptcy court. See id. at __, __, 131 S. Ct. at 2601, 2620. The debtor's tortious-interference counterclaim was the type of common law cause of action that, in the federal system, is traditionally resolved by Article III courts. Id. at __, 131 S. Ct. at 2616. The Supreme Court reasoned that "Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." Id. at __, 131 S. Ct. at 2618; see also Katchen v. Landy, 382 U.S. 323, 329-330, 332-334, 86 S. Ct. 467, 472-73, 474-75 (1966) (holding that a bankruptcy

38

referee could exercise what was known as "summary jurisdiction" over a voidable-preference claim brought by a bankruptcy trustee against a creditor who had filed a proof of claim in the bankruptcy proceeding because the referee could not rule on the creditor's proof of claim without first resolving the voidable-preference issue); Langenkamp v. Culp, 498 U.S. 42, 44-45, 111 S. Ct. 330, 331 (1990) (holding that a bankruptcy court could decide a preferential-transfer claim when the creditor filed a claim because then "the ensuing preference action by the trustee become[s] integral to the restructuring of the debtor-creditor relationship"). The Supreme Court ultimately held that the bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." Stern, 564 U.S. at __, 131 S. Ct. at 2620.[10]

---

[10]The Supreme Court's decision in Stern was based in part on its prior decision in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., where the Supreme Court held that a bankruptcy court lacked constitutional authority to finally adjudicate a state-law contract claim against a non-creditor because the claim did not implicate what would become known as the "public rights" doctrine. 458 U.S. 50, 63-87, 102 S. Ct. 2858, 2867-2880 (1982) (opinion of Brennan, J., joined by Marshall, Blackmun, and Stevens, JJ.); id. at 91, 102 S. Ct. at 2882 (Rehnquist, J., concurring, joined by O'Connor, J.). This "public rights" doctrine was described by the plurality in Northern Pipeline, which recognized that there was a category of cases involving "public rights" that Congress could constitutionally assign to "legislative" courts for resolution. The plurality stated that the "public rights" exception extended "only to matters arising between" individuals and the government "in connection with the performance of the constitutional functions of the executive or legislative departments . . . that historically could have been determined exclusively by those" branches. Id. at 67-68, 102 S. Ct. at 2869 (quotation marks omitted); see also Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 36, 49-64, 109 S. Ct. 2782, 2787, 2794-2802 (1989) (concluding that the particular fraudulent-conveyance claims at issue did not involve "public rights").

Importantly, in <u>Stern</u>, the Supreme Court rejected the creditor's argument that the bankruptcy court lacked jurisdiction to adjudicate his defamation claim against the debtor. <u>Id.</u> at \_\_, 131 S. Ct. at 2606-08. Because the allocation of authority between the bankruptcy court and the district court in § 157 "does not implicate questions of subject matter jurisdiction," a party may consent to the bankruptcy court's exercise of its statutory authority. <u>See id.</u> at \_\_, 131 S. Ct. at 2607-08 (noting that the creditor "repeatedly stated to the Bankruptcy Court that he was happy to litigate there," and declining to "consider his claim to the contrary, now that he is sad").

**D.    Analysis: Bankruptcy Court Was Authorized to Decide Ownership Issue**

As the Zeltser Group conceded before the district court, the ownership issue is a core matter that clearly "arises under" or "arises in a case under" chapter 11. Resolution of the threshold ownership issue was critical to the administration of the Alleged Debtors' estates and directly affected the debtor-creditor relationship. <u>See</u> 28 U.S.C. § 157(b)(2)(A), (O). The bankruptcy court necessarily had to determine who actually owned the Alleged Debtors in order to adjudicate the

---

After <u>Northern Pipeline</u>, "Congress revised the statutes governing bankruptcy jurisdiction" and "permitted the newly constituted bankruptcy courts to enter final judgments only in 'core' proceedings." <u>Stern</u>, 564 U.S. at \_\_, 131 S. Ct. at 2610. "With respect to such 'core' matters, however, the bankruptcy courts under the 1984 Act exercise the same powers they wielded under the Bankruptcy Act of 1978 (1978 Act), 92 Stat. 2549." <u>Id.</u>

validity of the alleged $32 million debt, because the answer determined whether the Petitioning Creditors' claims would be admitted or contested.  See Stern, 564 U.S. at __, 131 S. Ct. at 2616 (noting the Court's prior holding that "summary adjudication [of a preference issue] in bankruptcy was appropriate, because it was not possible for the referee to rule on the creditor's proof of claim without first resolving the voidable preference issue").[11]  Even assuming arguendo that the ownership issue was a non-core matter, the Zeltser Group expressly consented to the bankruptcy court's final adjudication of the ownership issue and waived any argument to the contrary.[12]  See 28 U.S.C. § 157(c)(2); Stern, 564 U.S. at __, 131 S. Ct. at 2607-08.  On several occasions during March 2011 to November 2011, the Zeltser Group made representations to the bankruptcy court, voluntarily participated in discovery, and appeared at hearing before the bankruptcy court—all indicating its willingness, in fact desire, for the bankruptcy court to decide the

---

[11]Our finding that the ownership issue is "core" is consistent with holdings of courts in other circuits.  Several courts have held that "control of a debtor-in-possession goes to the very heart of the administration of the debtor's estate, [and] it necessarily follows that the bankruptcy court may properly determine where such control resides."  See Bank of Am., NT&SA v. Nickele, No. CIV.A. 98-1501, 1998 WL 181827, at *3 (E.D. Pa. Apr. 16, 1998); SCK Corp. v. Rosenblum (In re SCK Corp.), 54 B.R. 165, 169 (Bankr. D.N.J. 1984) (same); see also In re Louis J. Pearlman Enterprises, Inc., 398 B.R. 59, 64 (Bankr. M.D. Fla. 2008) (describing ownership of the alleged debtors as "core").

[12]Because the ownership issue here does not implicate the Article III concern identified in Stern, we do not reach the issue of whether a party may consent to the bankruptcy court's adjudication of a Stern claim. See Exec. Bens. Ins. Agency v. Arkison, 573 U.S. __, __, 134 S. Ct. 2165, 2175 (2014) (expressly declining to decide whether a party can consent to trial of a Stern claim in the bankruptcy court).  However, we do note in passing that both District Court Judges Huck and Williams conducted de novo review, and thus Article III concerns were mitigated here in any event.

ownership issue. The Zeltser Group was even happy to litigate in the bankruptcy court without objection for five months following the June 23, 2011 decision in Stern. The Zeltser Group also filed a motion for partial summary judgment in its favor on the ownership issue from the bankruptcy court but then a short time later inexplicably contested the bankruptcy court's authority to decide it.

Furthermore, we agree with the district court that the narrow holding in Stern—which concerned the bankruptcy court's lack of constitutional authority to hear certain state common law counterclaims not necessarily resolved in the claims allowance process—is wholly inapplicable here. To be sure, in many respects, the ownership issue resembles the tortious-interference claim in Stern. Zeltser's ownership claim is a state-law claim that does not involve "public rights" or stem from a federal statutory scheme. See Stern, 564 U.S. at __, 131 S. Ct. at 2614-15. It does not involve a particularized area of law. See id. at __, 131 S. Ct. at 2615. And unlike the preference actions in Katchen and Langenkamp (where the rights of recovery were created by federal bankruptcy law), ownership is not determined by bankruptcy law. However, unlike the tortious interference claim in Stern, the ownership issue was "necessarily resolve[d]" by the bankruptcy court through the process of adjudicating the creditors' claims. See id. at __, 131 S. Ct. at 2616-17. The ownership issue does not simply have "some bearing" on the bankruptcy proceedings. See id. at __, 131 S. Ct. at 2618. Rather, for the reasons explained

above, the bankruptcy court could not undertake the bankruptcy proceedings without first determining who owned the Alleged Debtors, and thus who represented them, and ultimately whether the bankruptcy was contested or uncontested.  See Katchen, 382 U.S. at 329-30, 86 S. Ct. at 472-73 (affirming the bankruptcy court's authority because the referee could not rule on the creditor's proof of claim without first resolving the voidable preference issue).  Determining who represented the Alleged Debtors, and thus whether the proceedings were contested or uncontested, was a threshold issue in this case.[13]  And although the relevant parties did not file a proof of claim, Zeltser invoked the aid of the bankruptcy court by asking it to adjudicate the ownership issue.  As a result, it must abide by the consequences of that decision.  Cf. Stern, 564 U.S. __, 131 S. Ct. 2594.  Thus, the bankruptcy court had both statutory and constitutional authority to enter final judgment on the ownership issue.

For all of these reasons, we conclude that the district court did not err in denying withdrawal of reference.

---

[13]Even if ownership is not generally a core issue, the facts of this case make it core.  As both district courts concluded: "Resolution of the ownership issue is deeply embedded—indeed, it is the primary issue—in the resolution of the creditors' proofs of claim."  The bankruptcy court had to address the ownership dispute before it could adjudicate the underlying debt.  If Imedinvest was the proper owner (and therefore the Zeltser Group represented the Alleged Debtors), the bankruptcy proceedings would be uncontested.  If the Valmore Trust and Triangle were the proper owners (and the Redmond Group was the appropriate representative), the proceedings would be contested.  Determining who represented the Alleged Debtors was, in this case, a core issue.

## VI.  FISHER ISLAND AND LITTLE REST—SUMMARY JUDGMENT

### A.    Arguments on Appeal

The Zeltser Group alleges many procedural errors in the bankruptcy court's January 20, 2012 summary judgment order in favor of the Redmond Group.  First, the Zeltser Group argues that it lacked notice before the January 20, 2012 summary judgment order because the bankruptcy court's preliminary December 29, 2011 denial of the Zeltser Group's motion for partial summary judgment only expressly named Miselva (not successor trustee SP Trustees) and Fisher Limited/Grosvenor (not their subsidiaries), and thus the bankruptcy court materially departed from that order when its summary judgment order ruled as to the ownership of Fisher Island and Little Rest.  The Zeltser Group claims that it was unaware that the bankruptcy court would rule on the ownership of alleged debtors Fisher Island and Little Rest, thinking the bankruptcy court would limit its summary judgment order to the ownership of Fisher Limited and Grosvenor, their parent companies.

Second, the Zeltser Group argues that the bankruptcy court did not comply with Rule 7056(f), which requires notice and an opportunity to respond before summary judgment may be granted sua sponte, by limiting its response to the existing record.  Third, the Zeltser Group argues that the bankruptcy court improperly relied on the Examiner's report, which constituted inadmissible

44

hearsay. These three claims of alleged procedural error are meritless and warrant no further discussion.

The laundry list of objections does not end here. The Zeltser Group also argues that the bankruptcy court erred in allowing the ownership issue to proceed (1) as a contested matter raised in the Redmond Group's motion to strike the Zeltser Group's answers, instead of as an adversary proceeding, with its attendant procedural protections (i.e., the filing and service of a complaint and summons on all parties); and (2) without requiring joinder, under Federal Rule of Civil Procedure 19, of all "indispensable" parties having ownership interests in Fisher Island and Little Rest, including but not limited to the Valmore Trust, SP Trustees, Badri's widow, and Imedinvest.

Substantively, the Zeltser Group contends that material issues of disputed fact as to the ownership of Fisher Island and Little Rest precluded the entry of summary judgment. Specifically, the Zeltser Group argues that there were genuine disputes regarding the validity of the Valmore Trust, whether the JWL transfers were completed, and the applicability of the Gibraltar judgment to the bankruptcy proceedings.

## B.    Analysis

As an initial matter, we note that the Zeltser Group raised its adversary-proceeding and mandatory-joinder arguments for the first time in its unsuccessful

November 30, 2011 motion for clarification/reconsideration of the agreed June 7, 2011 Schedule Order.  Prior to filing that motion, the Zeltser Group itself characterized the ownership issue as a "contested matter" in the Schedule Order (as well as in its motion for partial summary judgment).  The Zeltser Group proceeded to litigate according to the Schedule Order for nearly six months without objection.  Only after the issuance of the unfavorable Examiner's report on November 18, 2011, did the Zeltser Group suddenly decide that the ownership issue could not proceed as the parties had agreed.

We are inclined to hold that the Zeltser Group forfeited its belated adversary-proceeding and mandatory-joinder arguments by failing to raise them before the bankruptcy court in any sort of timely manner.  See United States v. Olano, 507 U.S. 725, 731, 113 S. Ct. 1770, 1776 (1993) ("No procedural principle is more familiar" than that a right may be forfeited "by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." (quotation omitted)).  To quote the Supreme Court in Stern, the Zeltser Group "repeatedly stated to the Bankruptcy Court that [it] was happy to litigate there." 564 U.S. at __, 131 S. Ct. at 2608.  We will not consider its arguments to the contrary, "now that [it] is sad." Id.  In any event, the Zeltser Group's arguments fail on the merits, as discussed below.

46

1.    Adversary Proceeding

The Federal Rules of Bankruptcy Procedure distinguish between adversary proceedings and contested matters.  Adversary proceedings under Rule 7001 incorporate much of the Federal Rules of Civil Procedure.  See Fed. R. Bankr. P. 7001 advisory committee's note.  Rule 7001 lists ten types of matters which must be brought as adversary proceedings, including "proceeding[s] to determine the validity, priority, or extent of a lien or other interest in property . . . ."  Fed. R. Bankr. P. 7001(2).  In contrast, contested matters are subject to less elaborate procedures specified in Rule 9014.  "In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." Fed. R. Bankr. P. 9014(a).

Contrary to the Zeltser Group's argument, the bankruptcy court's determination of the ownership issue was not a "proceeding to determine the validity . . . [of an] interest in property" under Rule 7001(2), and thus an adversary proceeding was not required.  The validity of the $32 million debt alleged by the Petitioning Creditors, the only property interest at stake here, has not yet been adjudicated.  The bankruptcy court resolved the threshold issue of ownership for purposes of determining who was authorized to represent the Alleged Debtors with respect to that debt.  Furthermore, the bankruptcy court afforded the parties with

47

essentially the same procedural protections applicable in adversary proceedings, providing the Zeltser Group with more than adequate "notice and opportunity for hearing." See Fed. R. Bankr. P. 9014(a). Accordingly, the bankruptcy court did not err in allowing the ownership issue to proceed as a contested matter.

2.    Mandatory Joinder

The mandatory joinder requirements in Rule 19, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7019, do not apply to contested matters such as these. See Fed. R. Bankr. P. 1018; Fed. R. Civ. P. 19 (setting forth a two-step test to determine whether a party is necessary and indispensable to an action). Even if Rule 19 did apply here, the Zeltser Group did not meet its burden of proving that the parties not joined were both necessary and indispensable to the proceeding.

The Zeltser Group's appellate brief fails to articulate a single non-conclusory reason for why the bankruptcy court could not grant complete relief among the existing parties without joining the over a dozen non-parties identified by the Zeltser Group, or why the absence of these non-parties impeded their ability to protect their interests or subjected an existing party to a substantial risk of inconsistent obligations. See Fed. R. Civ. P. 19(a)(1). In fact, the Zeltser Group, purportedly on behalf of the Alleged Debtors, admitted to the alleged debt at the

48

outset of the proceedings, indicating that they believed the involuntary petitions could be adjudicated without any additional parties.

### 3.    Merits of Summary Judgment

Under Rule 56, as incorporated by Federal Rule of Bankruptcy Procedure 7056, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court may, after giving notice and a reasonable time to respond, grant summary judgment for a nonmovant or consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute. Fed. R. Civ. P. 56(f). A court may sua sponte grant summary judgment "so long as the losing party was on notice that [it] had to come forward with all of [its] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S. Ct. 2548, 2554 (1986). "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c).

Here, the record demonstrates no genuine issue of material fact as to the ownership of Fisher Island and Little Rest. We are not persuaded by the Zeltser Group's unsubstantiated arguments to the contrary, particularly given the Zeltser Group's total failure to raise any purported factual dispute in response to the

bankruptcy court's December 29, 2011 invitation to submit briefing.  The Zeltser

Group may not refuse to raise disputed issues before the bankruptcy court then

later claim on appeal that disputed issues precluded summary judgment.  Thus, the

bankruptcy court correctly granted summary judgment sua sponte in favor of the

Redmond Group.

## VII.  STANDING OF NON-PARTY APPELLANTS

Three non-party appellants—Fisher Limited, Grosvenor, and Areal—

contend that the district court erred in dismissing their appeals of the bankruptcy

court's January 20, 2012 summary judgment order for lack of standing.

### A.    Non-Parties Fisher Limited and Grosvenor

Non-party appellants Fisher Limited and Grosvenor argue that the district

court erred in requiring them to intervene, attend, or object in the bankruptcy

proceedings in order to appeal the bankruptcy court's summary judgment order.

They argue that the prudential "attend and object" prerequisite to standing is not

recognized in this circuit and does not preclude a non-party purportedly bound by a

judgment by the bankruptcy court from appealing that judgment to the district

court and to this Court.

Fisher Limited and Grosvenor further argue that the bankruptcy court lacked

personal jurisdiction to enter a judgment granting ownership of them to SP

Trustees because they were not served with process.  According to Fisher Limited

and Grosvenor, they may appeal the bankruptcy court's improper exercise of personal jurisdiction without having had to intervene or participate. Furthermore, they argue that the Redmond Group's failure to initiate an adversary proceeding and join all indispensable parties excused any requirements of attendance or objection.

## B.    Non-Party Areal

Similarly, non-party appellant Areal argues that the district court erred by imposing the "appear and object" requirement because the "person aggrieved" standard is the only prerequisite to non-party standing. Areal does not dispute that it was on notice of the bankruptcy proceedings, but rather contends that the district court improperly placed the burden on Areal to intervene and object.

According to Areal, the district court also erred procedurally in determining whether Areal was "aggrieved" by the bankruptcy court order. Specifically, Areal argues that the district court erred by: (1) discrediting the pledge agreement without conducting an evidentiary hearing to allow Areal to address disputed factual issues raised for the first time in the Redmond Group's reply (but not the initial motion to dismiss); and (2) making findings as to the substantive merits of Areal's ownership claim in Little Rest without a trial.

51

## C.    Analysis

To determine whether a person or entity has standing to appeal a bankruptcy court's order, we apply bankruptcy law's "person aggrieved" doctrine as a prudential standing requirement.  Westwood Cmty. Two Ass'n, Inc. v. Barbee (In re Westwood Cmty. Two Ass'n, Inc.), 293 F.3d 1332, 1334-35 (11th Cir. 2002).  Under the "person aggrieved" doctrine, a person has standing to appeal only when he is "directly and adversely affected pecuniarily by the order."  Id. at 1335 (quotation omitted).  In other words, the person must have a financial stake in the appealed order such that the order "diminishes their property, increases their burdens or impairs their rights."  Id. (quotation omitted).[14]  The three non-party appellants have not met this requirement here.

Non-parties Fisher Limited and Grosvenor's arguments in favor of their standing are largely based on the erroneous proposition that the bankruptcy court's summary judgment order "awarded them" to SP Trustees or otherwise bound them as parties.  Fisher Limited and Grosvenor are undisputedly the respective parent companies of Fisher Island and Little Rest, two of the Alleged Debtors.  The summary judgment order did not disturb Fisher Limited's or Grosvenor's claims to

---

[14]In a footnote, this Court noted that this holding was "limited to defining a person aggrieved in this circuit, which is only one of many hurdles a person must overcome to have standing to appeal.  The Bankruptcy Code also contains certain procedural requirements, including attendance at bankruptcy hearings, intervention, and filing a notice of appeal within certain time limits."  Id. at 1338 n.8.  District Court Judge Williams cited to this footnote to support her application of an "attend and object" prerequisite to standing.

ownership over Fisher Island and Little Rest.  The order merely named Fisher Limited and Grosvenor as part of the ownership chain for purposes of setting forth who had the authority to appoint counsel to represent alleged debtors Fisher Island and Little Rest in the bankruptcy proceedings.  Non-parties Fisher Limited and Grosvenor have not shown the requisite financial stake in the order—it did not diminish their property, increase their burdens, or impair their rights.  See In re Westwood, 293 F.3d at 1335.

As to non-party Areal, we find no error in the district court's dismissal of the appeal based on Areal's failure to show that it was a "person aggrieved" by the bankruptcy court's summary judgment order.  We note that Areal does not contest, as substantive error, any of the district court's fact findings as to the authenticity of the pledge agreement purportedly showing Areal's pecuniary interest in Little Rest.  Areal submitted no other evidence of its financial stake in the order.

Because we conclude that the non-party appellants failed to meet their burden of demonstrating their status as "persons aggrieved," we need not decide whether attendance and objection in the bankruptcy proceedings is a prerequisite for prudential standing in bankruptcy appeals.  See Big Top Koolers, Inc. v. Circus-Man Snacks, Inc., 528 F.3d 839, 844 (11th Cir. 2008) (appellate court can affirm on any ground supported by the record).  We also conclude that the three

53

non-party appellants' remaining arguments lack merit and therefore warrant no further discussion.

## VIII.  MUTUAL BENEFITS—FINAL JUDGMENT

### A.    Arguments on Appeal

As in the Fisher Island and Little Rest cases, the Zeltser Group contends that the bankruptcy court erred by allowing the ownership issue to proceed as a contested matter rather than as an adversary proceeding.  Without joinder of all indispensable parties in a properly-commenced adversary proceeding, the bankruptcy court lacked in personam jurisdiction to finally adjudicate the ownership rights of non-party shareholders in Mutual Benefits, and lacked in rem jurisdiction over the disputed property (i.e., Mutual Benefits' stock owned by the non-party shareholders).  For essentially the same reasons discussed above in Parts VI.B.1-2, we disagree.

Next, the Zeltser Group argues that the bankruptcy court (1) abused its discretion in denying a continuance, (2) erred in denying its Rule 52(c) motion for judgment on partial findings and its Rule 41(b) motion for involuntary dismissal, and (3) erred in basing the final judgment on factual findings unsupported by the record.  First, the Zeltser Group argues that the denial of a continuance severely prejudiced its presentation of the direct testimony of its key witnesses in support of its case in chief.  Second, the Zeltser Group contends the bankruptcy court applied

the incorrect legal standard in ruling on the Rule 52(c) and Rule 41(b) motions by failing to weigh the evidence presented or consider witness credibility.  Third, the Zeltser Group submits that the bankruptcy court clearly erred in ultimately finding that Davis had authority to act on behalf of Mutual Benefits.

## B.    Analysis

### 1.    Denial of Continuance

The denial of a continuance is not an abuse of discretion unless it "severely prejudices" the moving party.  Rink v. Cheminova, Inc., 400 F.3d 1286, 1296 (11th Cir. 2005).  We consider four factors to determine whether the denial of a continuance constitutes an abuse of discretion: (1) the moving party's diligence in its efforts to ready the case for trial; (2) the likelihood that the need for a continuance would have been remedied had the continuance been granted; (3) the extent to which granting the continuance would have inconvenienced the court and the opposing party; and (4) the extent to which the moving party might have suffered harm as a result of the denial.  Id.

We agree with the district court's thorough and reasoned analysis of these four factors.  The record is utterly devoid of any indication that the bankruptcy court's denial of a 60-day continuance, requested 10 days before the scheduled trial date, "severely prejudiced" the Zeltser Group.  See id.  Thus, we conclude that the bankruptcy court did not abuse its discretion in doing so.

2.    Denial of Rule 52(c) and Rule 41(b) Motions

Rule 52(c) provides as follows:

> Judgment on Partial Findings.  If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.  The court may, however, decline to render any judgment until the close of the evidence.  A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

Fed. R. Civ. P. 52(c) (emphasis added).  A prior version of Rule 41(b) contained similar discretionary language.  See Caro-Galvan v. Curtis Richardson, Inc., 993 F.2d 1500, 1503 n.7 (11th Cir. 1993) (substance of the former Rule 41(b) is found in the current version of Rule 52(c)).

The Zeltser Group argues that, in ruling on its motions, the bankruptcy court was required to consider witness credibility and to weigh the evidence presented. However, even if the bankruptcy court applied the wrong legal standard (i.e., the standard for summary judgment), it ultimately found the Redmond Group's testimonial and documentary evidence to be credible and persuasive, and entered final judgment on that basis.  There is no indication that, had the bankruptcy court considered Davis's credibility and weighed the Redmond Group's evidence, the court would have exercised its discretion to grant either motion midway through trial.  Thus, the bankruptcy court's statement that a Rule 52(c) or Rule 41(b) motion was "in some way similar to a summary judgment motion" amounted, at

56

most, to harmless error.  See Club Assocs. v. Consol. Capital Realty Investors (In re Club Assocs.), 951 F.2d 1223, 1234 n.13 (11th Cir. 1992).

      3.     Final Judgment

Here, all of the evidence at the Mutual Benefits trial came from the Redmond Group.  Despite offering enough evidence to defeat summary judgment and submitting extensive witness and exhibit lists, the Zeltser Group failed put on any case whatsoever at trial as to any alternative ownership theory as to Mutual Benefits.  Given the evidence in this record, we conclude the bankruptcy court did not err—much less clearly err—in finding that Davis, the president and sole director of Mutual Benefits, had the exclusive authority to retain counsel to represent Mutual Benefits, and that, pursuant to this authority, Davis retained the Redmond Group's attorneys in the bankruptcy proceeding.  Accordingly, the bankruptcy court did not err in entering final judgment on the ownership issue in the Mutual Benefits case.

## IX.  CONCLUSION

Finding no reversible error in any order on appeal, we **AFFIRM**.