[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-15444

_____

D.C. Docket No. 9:06-bkc-05723-FMD

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

ALAN FRANCIS BEANE,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the BK - FLM Fort Myers

_____

(November 23, 2016)

Before TJOFLAT and HULL, Circuit Judges, and MENDOZA,[*] District Judge.

HULL, Circuit Judge:

Pursuant to a certification of direct appeal and an order of this Court, the government directly appeals the decision of the Bankruptcy Court regarding the interest due from Alan Francis Beane for the taxable year 1998. The government claims a prior Tax Court decision never addressed the interest issue. The government also disputes how and when interest on Beane's 1998 tax deficiency should be calculated. To understand the interest issue, we must recount in detail the procedural history of the case.

## I.    BACKGROUND

### A.    2002 Notice of Deficiency

On May 9, 2002, the United States Internal Revenue Service ("IRS") issued a Notice of Deficiency for 1998 and 1999 to Beane. The notice set out Beane's 1998 federal income tax deficiency in the amount of $3,080,430. This deficiency amount is the difference between the tax due on Beane's taxable income for 1998 and the tax he reported on the return filed for that year.[1] On April 4, 2005, Beane filed a petition with the United States Tax Court to contest the Notice of Deficiency for 1998.

---

[*]Honorable Carlos Eduardo Mendoza, United States District Judge for the Middle District of Florida, sitting by designation.

[1]Typically, a deficiency is "the difference between the tax imposed by law and the tax shown upon the return." Manning v. Seeley Tube & Box Co. of N.J., 338 U.S. 561, 565, 70 S. Ct. 386, 388 (1950); 26 U.S.C. § 6211(a).

**B.    2006 Bankruptcy Petition**

On October 19, 2006, Beane filed a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Middle District of Florida.  On November 14, 2006, the IRS filed a Motion for Relief from the Automatic Stay.  The Bankruptcy Court granted the Motion and allowed the IRS to continue the Tax Court proceeding against Beane.

**C.    June 25, 2009 Tax Court Decision**

The case before the Tax Court involved the IRS's aforementioned notice of a tax deficiency sent to Beane regarding his 1998 federal income tax return.  On June 25, 2009, the Tax Court entered a Memorandum Findings of Fact and Opinion in the case of Beane v. Commissioner of Internal Revenue, No. 6529-05. Beane v. Comm'r, 97 T.C.M. (CCH) 1846 (T.C. 2009).  This Memorandum Opinion aimed to resolve multiple issues related to Beane's 1998 tax deficiency and directed the parties to file computations of Beane's deficiency pursuant to the Tax Court's determination of the issues therein.  The issue before the Tax Court relevant to this appeal was "the extent to which, if at all, [Beane's tax] deficiency for 1998 may be reduced or an overpayment may be determined as a result of," among other things, loss carrybacks from subsequent years.[2]  The government

---

[2]Section 172 of the Internal Revenue Code allows a taxpayer to carry back or carry forward a net operating loss as a deduction from income under certain circumstances.  26 U.S.C. § 172. Generally, a net operating loss can be carried back to each of the two taxable years preceding the taxable year of the loss.  § 172(b)(1)(A)(i).

conceded that the amount owed by Beane for 1998 should be reduced by loss carrybacks.

The Tax Court noted that, under 26 U.S.C. § 6214(b), its jurisdiction to determine whether there has been an overpayment is limited to the year for which the notice of a deficiency was issued, which was 1998. As a result, the Tax Court had "no jurisdiction in this case to redetermine the amount of the overpayment for 1999 or to determine the accrued interest on that overpayment, notwithstanding [Beane's] insistence that he is entitled to offset those amounts against the admitted deficiency for 1998."[3] Because of the Tax Court's limited jurisdiction, "[t]he amount ultimately due to or from [Beane] will not be known until the decision is entered in this [Tax Court] case and the correct deficiency for 1998 is assessed. [Beane's] account will then reflect adjustments that have been made or agreed upon for other years."

The Tax Court determined that "the amount to be included in [its final] decision will reflect the tax due for 1998 on the corrected income that [Beane] received during that year, reduced by the loss carryovers from other years and other income, deduction, and credit adjustments" and that "[t]he tax due will

---

[3]The Tax Court acknowledged that provisions of the Internal Revenue Code limit its jurisdiction, in that computation and adjudication of the net amounts owed by or to Beane over a period of years was beyond the scope of the case. The Tax Court explained that determination of a deficiency should not be confused with an accounting for taxes owed, amounts assessed, amounts paid, and net amounts due.

4

reflect prior payments [Beane] remitted with his return for 1998."[4]  Notably, the Tax Court determined the amount of Beane's income for 1998 and the amount of taxes due on that income.  The Tax Court, however, did not determine the interest due resulting from Beane's underpayment of the ultimate amount of the 1998 tax deficiency.

### D.    September 9, 2009 Tax Court Decision

On September 9, 2009, following the preparation of computations by both parties, the Tax Court entered its Order and Decision.  The Tax Court adopted the IRS's computation and determined that there was a deficiency of $1,359,361 in the federal income tax due from Beane for the year 1998.  The IRS's computation included, among other things, a reduction in Beane's 1998 income resulting from his carryback of a net operating loss for the year 2000.  But the IRS did not consider the net operating loss carryback to have arisen until April 15, 2001, the date that the tax year 2000 return was due.  In other words, while the carryback reduced Beane's pre-existing 1998 deficiency, the carryback was not earned until 2000 and thus was not in play, or effective, until April 15, 2001.  The IRS and the

---

[4]In addition, the Tax Court cautioned that "arguments not addressed in this opinion are irrelevant to [its] decision or have even less merit than those addressed."

5

Tax Court calculated the reduced 1998 tax deficiency but, once again, did not calculate the interest owed by Beane for underpaying his taxes in 1998.[5]

## E.    2011 Bankruptcy Court Decision

Following the 2009 resolution of the Tax Court case and further proceedings in Bankruptcy Court, the IRS filed an accounting of Beane's taxes with the Bankruptcy Court that purported to include a "full accounting of all transactions affecting" Beane's taxes from 1998 to 2003.  The IRS's accounting credited part of Beane's 1999 tax overpayment to his 1998 tax liability, effective April 15, 2000, which ensured "the balance of Beane's 1998 tax liability would be fully paid as of April 15, 2001, when a tax year 2000 net operating loss was applied."  The accounting also credited part of Beane's 1999 tax overpayment to his 2003 tax liability effective April 15, 2004, making the balance of Beane's 2003 tax liability fully paid as of that date.  Even after offsetting those liabilities, Beane's overpayment of his 1999 and 2000 taxes resulted in the government delivering checks to Beane in the amounts of $963,823.55 and $105,009.43, respectively.

Beane filed objections to the IRS's accounting of his 1998-2003 taxes. Beane argued that the IRS had ignored the Tax Court's determination of his 1998

---

[5]Following the conclusion of the Tax Court case, Beane and the IRS entered into a Partial Agreement resolving most of their disputes regarding refunds due to Beane for tax years 1999 and 2000.  On April 21, 2010, the United States House and Senate Joint Committee on Taxation approved the Partial Agreement.

6

tax deficiency and pushed the tax effect of his 2000 net operating loss carryback to April 16, 2001 (the day after his 2000 tax return was due).

On February 10, 2011, the Bankruptcy Court sustained Beane's objections to the government's accounting with respect to the 1998 tax deficiency. The Bankruptcy Court found that it was "bound by the Tax Court decision . . . that the deficiency in federal income tax due from petitioner for the taxable year 1998 is the amount of $1,359,361." The Bankruptcy Court noted that the IRS, of its own accord, had further reduced the 1998 tax deficiency "to $1,340,664." The Bankruptcy Court therefore ordered the government to file another accounting of the minimum net refund due to Beane and his bankruptcy estate. As a result, the IRS refunded Beane $433,941.14 in interest for 1998, but Beane's attorney was required to keep the funds in escrow until the conclusion of any appeals.

On February 24, 2011, the government appealed the Bankruptcy Court's February 10, 2011 Order to the District Court.[6]

## F.    2012 District Court Decision

In a July 25, 2012 Memorandum and Opinion, the District Court affirmed the Bankruptcy Court. The District Court noted that the Tax Court's decision was a final judgment as there was no post-judgment motion for reconsideration and no

_____

[6]On May 26, 2011, the Bankruptcy Court confirmed Beane's Chapter 11 reorganization plan. The bankruptcy plan provided that both Beane and the IRS retained any claims related to the Tax Disputes, including the minimum net refund due to Beane and the estate and, more specifically, the appeal of the Bankruptcy Court's order sustaining Beane's objections to the IRS's accounting.

appeal.  In re Beane, No. 2:11-CV-213, 2012 WL 3041098, at *2 (M.D. Fla. July 25, 2012).[7]  A Recomputation Specialist from the Civil Tax Division, Office of Review, Department of Justice had prepared the accounting ordered by the Bankruptcy Court.  Id.  The District Court discussed the declaration of that specialist and explained that the "Recomputation Specialist decided—probably correctly—that the IRS calculations adopted by the Tax Court were wrong."  Id. at *3.

The District Court determined that that Tax Court had established "the deficiency after allowing the loss carryback without first calculating the interest on the total tax due during the period from April 15, 1999 (when the 1998 tax was due) to April 15, 2001 (when the loss carryback for 2000 became available)."  Id.  The District Court concluded that this "effectively forgives a substantial portion of the interest obligation of the taxpayer that accrued on the unpaid deficiency during that period."[8]  Id.  The District Court described the government's argument: "the Government merely uses its present calculation of the total tax deficiency before allowing credit for the loss carryback in order to 'correctly' calculate and capture the interest obligation that the Tax Court did not account for in its computations."

---

[7]The District Court initially noted that it shared the Tax Court's frustration with the inability of counsel to clearly identify the issue to be decided and the relevant chronological chain of factual events that gave rise to the issue.  2012 WL 3041098, at *1 n.1.

[8]To reach this conclusion, the District Court relied on Manning, which we discus for fully infra Part II.C.

8

Id.  The District Court rejected that argument by the government as "an adroit but unpersuasive explanation."  Id.  Instead, the District Court concluded:

> The fact remains that the calculations, as candidly explained by the Recomputation specialist, employ a 1998 tax deficiency of $2,846,457 which is directly contrary to the Tax Court determination of $1,359,361 as the amount of 1998 tax deficiency.  And the fact that the Tax Court calculations were probably wrong in the way they applied the carryback credit—or wrong in any other manner—is inconsequential.  A final judgment by a court of competent jurisdiction, even if it is demonstrably incorrect, is binding on the parties unless set aside on appeal or through post judgment proceedings in the court that issued the judgment . . . .

Id.  The District Court thus affirmed the Bankruptcy Court's February 10, 2011 ruling that the IRS's method of applying the carryback to Beane's 1998 taxes was contrary to the Tax Court's decision.[9]  Id. at *4.

The government appealed.

## G.    2013 Appeal to this Court

This Court dismissed the government's initial appeal for lack of jurisdiction.  Specifically, this Court determined that the District Court's order, which affirmed the Bankruptcy Court, was not a final order and thus was not appealable under the collateral order doctrine.  United States v. Beane, No. 13-10269 (11th Cir. June 27, 2013) (unpublished).

---

[9]The District Court separately denied, without further discussion, a motion for rehearing from the government.

9

## H.    Remanded Proceedings

On June 22, 2015, the Bankruptcy Court entered a consent order in this case. According to the Bankruptcy Court, just before trial the parties reached a settlement agreement.  The Bankruptcy Court explained that its prior order of February 10, 2011, sustaining Beane's objection to the government's accounting, "held that the IRS had incorrectly applied the Debtor's net operating loss carryback from tax year 2000 as of April 15, 2001, instead of April 15, 1999, when calculating accrued statutory interest on the Debtor's 1998 tax deficiency, resulting in an overpayment of interest by the Debtor attributable to tax year 1998."  The parties' settlement resolved all other matters in this case but preserved the government's right to appeal the Bankruptcy Court's determination that the IRS must refund interest paid on the 1998 tax deficiency based on applying the 2000 net operating loss carryback on April 15, 1999 (when the 1998 tax was due) instead of April 15, 2001 (when the 2000 carryback became effective).  This is the "1998 Interest Claim" at issue now before this Court.  The settlement also preserved Beane's claims to the amount of that refund.  The Bankruptcy Court stated that because all other contested issues had been resolved, including the 1998 Interest Claim subject to appeal, the consent order constituted a final order from which an appeal may be taken on the 1998 Interest Claim.

10

On July 21, 2015, the Bankruptcy Court, at the request of the government and with Beane's agreement, issued a certification for direct appeal to this Court.

According to the Bankruptcy Court, the issue on appeal "concerns the effective date of the Debtor's net operating loss carryback from tax year 2000 for purposes of determining statutory interest on the 1998 tax deficiency determined by the Tax Court." The Bankruptcy Court explained that after the Tax Court decision, the IRS included in the balance due from Beane for 1998 "accrued statutory interest from the date of the deficiency (April 15, 1999) to the date on which the 2000 net operating loss carryback became effective (April 15, 2001)." In contrast, the Bankruptcy Court clarified that it had held, "feeling . . . bound by the Tax Court's determination," "that the 2000 net operating loss carryback was effective on April 15, 1999 for purposes of calculating statutory interest on the 1998 liability." The Bankruptcy Court's ruling resulted in the government issuing a refund of $433,391.14, now held in escrow.

This Court granted the government's petition for permission to appeal directly from the Bankruptcy Court, United States v. Beane, No. 15-90021 (11th Cir. Dec. 9, 2015) (unpublished), and the government appealed.

11

## II.    DISCUSSION

### A.    Standard of Review

"In a bankruptcy case, this Court sits as a second court of review and thus examines independently the factual and legal determinations of the bankruptcy court and employs the same standards of review as the district court." In re Fisher Island Invs., Inc., 778 F.3d 1172, 1189 (11th Cir. 2015) (quotation marks omitted). "Where the district court affirms the bankruptcy court's order, we review the bankruptcy court's decision." Id. "We review the bankruptcy court's factual findings for clear error and its legal conclusions de novo." Id. "The district court's legal determinations are also reviewed de novo." Id.[10]

### B.    Issue on Appeal

As an initial matter, we must determine the issue on appeal. As the District Court noted, the parties in this case have struggled "to clearly identify the issue to be decided." After reviewing the orders of the Bankruptcy Court and District Court, it is apparent that the underlying issue in this case is this: given Beane owes interest on his underpayment of 1998 taxes that were due on April 15, 1999, do you calculate that interest by using (1) the amount of the deficiency owed on the 1998 taxes from April 15, 1999 through April 15, 2001, when the 2000 net

---

[10]For example, both the District Court's application of res judicata and interpretation of the Internal Revenue Code are reviewed de novo. Batchelor-Robjohns v. United States, 788 F.3d 1280, 1284 (11th Cir. 2015).

operating loss carryback became effective, or (2) the amount of the deficiency calculated by the Tax Court, which included a full reduction for the 2000 net operating loss carryback starting as of April 15, 1999?  In other words, for the 1998 interest calculation, is the net operating loss carryback effective as of April 1, 1999 or April 15, 2001?  The government contends that Beane "owed interest on the unreduced deficiency for 1998 from the time his return was due, on April 15, 1999, until April 15, 2001," when the net operating loss carryback became effective.

Given the decisions discussed above, the parties agree that this Court must determine whether the Tax Court's 2009 decisions and computation of Beane's 1998 tax deficiency have any res judicata or collateral estoppel effect that would preclude the Bankruptcy Court from deciding whether Beane owed interest on the unreduced 1998 deficiency from April 15, 1999 until April 15, 2001.

## C.    The Effect of a Net Operating Loss Carryback on Interest Owed on an Underpayment

In order to determine the scope of the Tax Court's ruling and address the government's position on appeal, we first need to comprehend the underlying dispute in this case.

A deficiency is usually "the difference between the tax imposed by law and the tax shown upon the return."  Manning v. Seeley Tube & Box Co. of N.J., 338 U.S. 561, 565, 70 S. Ct. 386, 388 (1950); 26 U.S.C. § 6211(a).  In Manning, the

13

Supreme Court addressed "whether the interest on a validly assessed deficiency is abated when the deficiency itself is abated by the carry-back of a net operating loss." 338 U.S. at 565, 70 S. Ct. at 389.[11] The Supreme Court held: "The subsequent cancellation of the duty to pay this assessed deficiency does not cancel in like manner the duty to pay the interest on that deficiency." Id. The Supreme Court reasoned that until the day the deficiency was actually assessed, the taxpayer had an obligation to pay that tax and, because the taxpayer failed to pay the tax, the taxpayer had the use of money which should have been in the government's possession. Id. at 565-66, 70 S. Ct. at 389. "The fact that the statute permits the taxpayer subsequently to avoid the payment of that debt [by a future loss carryback] in no way indicates that the taxpayer is to derive the benefits of the funds for the intervening period." Id. at 566, 70 S. Ct. at 389.

Based on legislative history, the Supreme Court in Manning concluded "that the carry-back was not to be interpreted as deferring or delaying the prompt payment of taxes properly due." Id. at 567, 70 S. Ct. at 390. Moreover, the taxpayer "is not entitled to a refund of the assessed interest." Id. at 569, 70 S. Ct. at 391. The Supreme Court "h[e]ld that where a deficiency and interest have been validly assessed under any applicable statutory procedure, a subsequent carry-back

---

[11]Manning, decided in 1950, dealt with an earlier version of the Internal Revenue Code.

14

with an abatement of the deficiency does not abate the interest previously assessed on that deficiency." Id. at 570, 70 S. Ct. at 391.

The Internal Revenue Code ("IRC") provides for the reduction of income tax by a carryback, as well as the computation of interest:

> If the amount of any tax imposed by subtitle A is reduced by reason of a carryback of a net operating loss or net capital loss, such reduction in tax shall not affect the computation of interest under this section for the period ending with the filing date for the taxable year in which the net operating loss or net capital loss arises.

26 U.S.C. § 6601(d)(1).[12] The "[g]eneral rule" for interest on an underpayment is: "If any amount of tax . . . is not paid on or before the last date prescribed for payment, interest on such amount . . . shall be paid for the period from such last date to the date paid." § 6601(a). Pursuant to § 6601, the filing date for the taxable year in which the net operating loss arose in this case is April 15, 2001, and the reduction in tax from a carryback of a net operating loss does not affect the computation of interest on any tax due prior to that date.

Section 6601 thus provides that any net operating loss carryback accrued by Beane would not affect the computation of interest Beane would have owed on the 1998 underpayment from April 15, 1999 through April 15, 2001, when the net

---

[12]Section 6601(d)(1) "codifies the principle announced in [Manning] that a taxpayer is liable for interest on a deficiency until the deficiency is paid or otherwise abated" and "provides that a reduction in tax by reason of a carryback of an NOL does not affect the computation of statutory interest due for the period ending with the filing date for the taxable year in which the NOL arose." Urbano v. Comm'r, 122 T.C. 384, 394–95 (2004).

15

operating loss carryback became effective.  Based on § 6601, the lower deficiency number, determined by the Tax Court, would not be used in the calculation of that interest amount.  This Court thus must determine whether the Tax Court in its proceedings made a contrary ruling, which, even if wrong, has preclusive effect.

## D.    Res Judicata Standard

"Res judicata is a judicially crafted doctrine, created to provide finality and conserve resources."  Maldonado v. U.S. Att'y Gen., 664 F.3d 1369, 1375 (11th Cir. 2011).  "Res judicata comes in two forms: claim preclusion (traditional 'res judicata') and issue preclusion (also known as 'collateral estoppel')."  Cmty. State Bank v. Strong, 651 F.3d 1241, 1263 (11th Cir. 2011); see also Johnson v. United States, 576 F.2d 606, 611 (5th Cir. 1978) ("While the term 'res judicata' in its broadest sense encompasses collateral estoppel, in a narrower sense these two phrases do carry different although related meanings.  Under the principles of 'res judicata' in the narrower sense, a judgment in a prior suit between the same parties bars a suit on the same cause of action not only as to all matters offered at the first proceeding, but also as to all issues that could have been litigated.  Collateral estoppel, however, precludes relitigation only of those issues actually litigated in the original action, whether or not the second suit is based on the same cause of

action.").[13]  The parties in this case raised both res judicata in its narrow sense (claim preclusion), and collateral estoppel (issue preclusion).

"For res judicata to bar a subsequent case, four elements must be present: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." Maldonado, 664 F.3d at 1375 (quotation marks omitted).  "For collateral estoppel to be invoked 1) the issue must be identical in the pending case to that decided in the prior proceeding; 2) the issue must necessarily have been decided in the prior proceeding; 3) the party to be estopped must have been a party or have been adequately represented by a party in the first proceeding; and 4) the precluded issue must actually have been litigated in the first proceeding."  Blohm v. Comm'r, 994 F.2d 1542, 1553 (11th Cir. 1993).

The parties in this case contest whether the Bankruptcy Court and District Court erred in giving res judicata effect to the Tax Court's determination of the 1998 tax deficiency.  There is no dispute that the Tax Court's decision was a final judgment or that the parties were identical in both suits.  We thus address, for claim preclusion, whether the Tax Court acted within its jurisdiction and whether

---

[13]This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

the same cause of action was present, and, for issue preclusion, whether the issue at hand was actually litigated and decided by the Tax Court.

## E.    The Tax Court's Jurisdiction over the Interest Calculation

In this case, determining what the Tax Court actually decided is closely related to the extent of its jurisdiction, in part because the Tax Court's decision emphasized its limited jurisdiction to hear all of the issues raised by the parties. We first determine whether the Tax Court had jurisdiction to render a decision on how to calculate the interest owed by Beane on the 1998 underpayment.

"[T]he Tax Court is a court of strictly limited jurisdiction and powers." Roberts v. Comm'r, 175 F.3d 889, 896 (11th Cir. 1999).  A Tax Court case is not one for collection of taxes but a review of the government's determination of a deficiency by the taxpayer.  Id.  Section 6213(a) of the IRC gives the Tax Court jurisdiction to redetermine a deficiency assessed by the IRS following a notice of deficiency to the taxpayer.  26 U.S.C. § 6213(a); see also Clark v. Campbell, 501 F.2d 108, 112 (5th Cir. 1974) ("The jurisdiction of the Tax Court to redetermine tax liability prior to payment is explicitly based on the issuance of a deficiency notice.").  Moreover, "the receipt of a notice of deficiency is a jurisdictional requirement for access to the Tax Court."  Musso v. Comm'r, 531 F.2d 772, 774 (5th Cir. 1976).  The IRC then provides that "the Tax Court shall have jurisdiction to redetermine the correct amount of the deficiency . . . and to determine whether

any additional amount, or any addition to the tax should be assessed, if claim therefor is asserted."  26 U.S.C. § 6214(a).

The Supreme Court has explained that when a Tax Court finds the existence of a deficiency, it does not decide other questions such as those related to interest or penalties, as those are outside the scope of the petition to the Tax Court. Comm'r v. McCoy, 484 U.S. 3, 6–7, 108 S. Ct. 217, 219 (1987).

The Tax Court itself has noted that: "It is equally well settled that this Court's jurisdiction to redetermine a deficiency in tax generally does not extend to statutory interest imposed under section 6601."  Pen Coal Corp. v. Comm'r, 107 T.C. 249 (1996); see also Sunoco Inc. v. Comm'r, 663 F.3d 181, 189 (3d Cir. 2011) ("Except in limited circumstances, the Tax Court also lacks jurisdiction over issues relating to interest, whether on underpayments or overpayments.").  Pen Coal explained: "[S]ection 6601(e)(1) expressly provides that interest prescribed by section 6601 is treated as tax 'except [for purposes of] subchapter B of chapter 63, relating to deficiency procedures'.  Because the effect of such language is to exclude interest from the definition of a 'tax' for purposes of section 6211(a), it follows that such interest is not a deficiency."  107 T.C. 249; see also Sunoco, 663 F.3d at 189 ("The interest imposed on underpayments by I.R.C. § 6601(a) is generally excluded from the definition of a 'deficiency' which the Tax Court has

19

jurisdiction over, but it is otherwise treated as a tax pursuant to I.R.C.

§ 6601(e)(1)." (citation omitted)).[14]

A deficiency therefore does not include interest on an underpayment. 26

U.S.C. § 6211(a). Indeed, "it has long been held that without a deficiency letter

that [tax] court has no jurisdiction." Musso, 531 F.2d at 774; see also Stoecklin v.

Comm'r, 865 F.2d 1221, 1224 (11th Cir. 1989) ("A deficiency notice . . . is a

taxpayers' ticket to the Tax Court . . . ." (quotation marks omitted)). The Tax

Court's jurisdiction is limited to the deficiency in the notice, which does not

include interest pursuant to §§ 6601(e)(1) and 6211(a).

Accordingly, the Tax Court in Beane's case did not have jurisdiction over

the calculation of § 6601 interest on the underpayment for 1998. The Tax Court

was clear in this case that its jurisdiction was limited to the notice of deficiency for

the 1998 taxes. In a deficiency proceeding, the amount of the deficiency does not

include the interest. While in some instances, such as an overpayment, the Tax

Court may have jurisdiction over interest issues, none of those are present here. To

the extent the Tax Court determined that Beane's reduced 1998 tax deficiency,

including the net operating loss carryback, should be used to calculate the

---

[14]Sunoco further explained that there is an exception to this general rule: when "the Tax Court properly obtains jurisdiction over a deficiency for a given year and then finds that the taxpayer has overpaid its taxes for that year, the Tax Court may determine an overpayment of interest paid on the deficiency, if the interest accrued and was paid before the overpayment arose." 663 F.3d at 189. This "overpayment" exception does not apply to Beane's Tax Court proceeding.

underpayment interest Beane owed, the Tax Court did not have jurisdiction to make such a determination.  Claim preclusion therefore does not apply.

## F.      The Cause of Action in the Tax Court Proceeding

Claim preclusion fails for a second reason too.

"In federal tax litigation one's total income tax liability for each taxable year constitutes a single, unified cause of action, regardless of the variety of contested issues and points that may bear on the final computation." Finley v. United States, 612 F.2d 166, 170 (5th Cir. 1980).  "As in any other area, res judicata bars subsequent litigation of a previously adjudicated cause of action, including those claims and defenses that could have been, but were not, raised in the earlier proceeding." Id.  "For this reason, courts have long held that res judicata does not bar a subsequent tax suit unless the suit involves the same tax year and tax liability as a previous one." Batchelor-Robjohns v. United States, 788 F.3d 1280, 1288 (11th Cir. 2015).  Similarly, "res judicata does not apply to suits involving different types of tax liability, even when the suits involve the same underlying transaction, and, at least in some respects, the same tax year." Id. at 1289.

Beane's "single, unified" cause of action in the Tax Court proceeding was his "total income tax liability for" 1998.  The proceeding stemmed from a notice of deficiency for 1998.  Section 6601(e)(1) makes it clear that interest on an underpayment under § 6601 is treated as a tax except for purposes of a deficiency

21

proceeding.  Beane's Tax Court proceeding was a deficiency proceeding on his 1998 tax liability and did not encompass the § 6601 underpayment interest.  The government's claim in the Bankruptcy Court, however, sought payment of that interest, which was a different cause of action.  Claim preclusion therefore does not apply to any Tax Court ruling on the calculation of the § 6601 underpayment interest, and the Bankruptcy Court did not have to defer to the 1998 tax deficiency calculated by the Tax Court for purposes of computing the interest owed.

## G.    Whether the Tax Court Decided the Interest Issue

The Tax Court limited its ruling in this case to determining the amount of Beane's 1998 tax deficiency.  The 1998 deficiency was the subject of the notice of deficiency sent to Beane.  The Tax Court explained that the determination of the amount of the 1998 deficiency is distinct from any accounting of any "net amounts due" and that computation of such amounts "is well beyond the proper scope of this case."  In directing the filing of computations by the parties, the Tax Court directed that "[f]or our purposes in this case, the amount to be included in the decision will reflect the tax due for 1998 on the corrected income that petitioner received during that year, reduced by the loss carryovers from other years and other income, deduction, and credit adjustments." (emphasis added).

Notably, the Tax Court did not discuss § 6601 or any interest owed by Beane.  Indeed, the Tax Court explained that, because of the limited inquiry of the

22

Tax Court proceedings, the "amount ultimately due to or from [Beane] will not be known until the decision is entered in this case and the correct deficiency for 1998 is assessed." Nothing in the Tax Court's opinion addressed the calculation of interest in general, much less whether a 2000 net operating loss carryback on a 1998 tax deficiency would preclude interest accruing before that carryback. The Tax Court did not ask for any computations of interest and provided no instructions for how to do so. The statement of income tax changes submitted by the IRS to the Tax Court, and upon which the Tax Court relied for computation of the deficiency, did not include any calculation of interest. Instead, the Tax Court stressed that the computations were only for the purposes of that particular case—to determine the amount of tax owed by Beane for tax year 1998 as per the notice of deficiency.

We therefore conclude that collateral estoppel does not require the use of the Tax Court-determined 1998 deficiency amount for calculating interest because the Tax Court did not decide the issue of whether that amount had to be used for the subsequent interest calculation. For collateral estoppel to apply, the issues litigated and decided in the previous cause must be identical, Matter of McWhorter, 887 F.2d 1564, 1567 (11th Cir. 1989), as well as "a critical and necessary part" of the judgment, Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1359 (11th Cir. 1998). The Tax Court determined the amount of Beane's 1998 tax deficiency but did not decide the next step—how that determination affected his liability for

23

interest on the 1998 underpayment.  The issue presented to the Bankruptcy Court was therefore neither identical to the issue decided by the Tax Court nor critical and necessary to the Tax Court's judgment.  Collateral estoppel does not apply.

## H.    The Partial Agreement and Equitable Estoppel

Beane contends that the Partial Agreement entered into between himself and the IRS, coupled with the estimated interest amounts given to him by the IRS agent, equitably estops the government from using any amount of the 1998 tax deficiency other than the amount, decided by the Tax Court, that Beane and the IRS used in negotiating and entering into the Partial Agreement.  "To make out a claim of estoppel against the Government, a party must adduce evidence of the following: (1) words, conduct, or acquiescence that induces reliance; (2) willfulness or negligence with regard to the acts, conduct, or acquiescence; (3) detrimental reliance; and (4) affirmative misconduct by the Government." United States v. McCorkle, 321 F.3d 1292, 1297 (11th Cir. 2003).  Beane's position is without merit.

First, Beane admits that, during the negotiation of the Partial Agreement, the IRS agent gave him only an "estimate" of the interest on the 1998 deficiency.  The government thus did not engage in conduct that induces reliance.  Second, Beane has not shown that the government acted negligently.  Instead, the IRS agent warned Beane that he was "not a specialist in the computation of interest" and

24

provided his "opinion only," which "should not be construed as the final determination of the matter." Because the IRS agent warned Beane of the possibility of an error, Beane could not reasonably rely on the IRS agent's estimations.

Third, Beane cites no evidence in the record supporting the supposition that he "relied on the beginning balance-interest accrual information provided by IRS in deciding to enter into the proposed Partial Agreement." Instead, a letter from Beane's attorney indicates that he understood partial agreements are entered into where the taxpayer agrees with some, but not all, of the issues. Because Beane cannot show actual reliance, he cannot fulfill the third element of equitable estoppel.

Fourth, there is no evidence of affirmative misconduct by the government. Instead, the parties agree that the IRS willingly reduced Beane's 1998 tax deficiency from the amount determined by the Tax Court because of errors in the computations. If anything, this shows positive conduct by the government. By appealing, the government has not engaged in misconduct either. Instead, it has appealed a serious and difficult question of law. See McCorkle, 321 F.3d at 1297 ("Affirmative misconduct requires more than governmental negligence or inaction; otherwise, prong two and prong four would be redundant.").

25

Fifth, the Partial Agreement, by its own terms, only dealt with the tax and penalties for the years 1999 and 2000. Form 886-A, "Explanation of Items," attached to the Partial Agreement, makes it clear that the "partial agreement relates only to the calculation of the minimum tax refund due taxpayer for the years 1999 and 2000. The taxpayer disputes . . . application of the net operating loss for the year 2000 as originally used in the Rule 155 computation for the 1998 tax year." This document makes it clear that the IRS and Beane did not come to an agreement about the interest calculation for the 1998 tax deficiency.[15]

For all of these reasons, we conclude the government's claim of interest is not barred by equitable estoppel.

## I. Judicial Estoppel

Beane argues that judicial estoppel prevents the government, through the Department of Justice, from taking a contrary position on this appeal from one taken by the IRS in front of the Tax Court, namely whether to use the net operating loss to determine Beane's 1998 tax deficiency. Beane's position is without merit.

Under the equitable doctrine of judicial estoppel, "a party is precluded from 'asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.'" Burnes v. Pemco Aeroplex, Inc., 291 F.3d

---

[15]Additionally, "it is far from clear that the doctrine of equitable estoppel may even be applied against a government agency." Savoury v. U.S. Att'y Gen., 449 F.3d 1307, 1318 (11th Cir. 2006). We need not come to that conclusion here, however, as Beane has no case for the application of equitable estoppel.

26

1282, 1285 (11th Cir. 2002) (quoting 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 134.30 (3d ed. 2000)).  In this case, the government did not take any contradictory or inconsistent positions.

Beane points to no place in the record where the IRS took a position in the Tax Court proceedings on how to calculate the interest on Beane's 1998 underpayment that contradicts the IRS's later application of those rules or its position before the Bankruptcy Court.  The IRS did concede that Beane's deficiency for that year should be reduced by the carryback of the 2000 net operating loss.  The IRS, however, took no position on how it would calculate the relevant interest.  We need not go any further.  Beane conflates two separate but closely related issues on which the IRS took a position.  Those positions—on how to calculate the deficiency and how to calculate the interest—are not contradictory.  Accordingly, judicial estoppel does not apply.

## J.    Assessment of the Interest

Beane argues that the IRS "never assessed any deficiency interest against Beane in excess of that which had accrued on the [Tax Court-determined deficiency amount]."

As an initial matter, it appears that Beane did not raise this issue below and has thus waived it.  "It is well-settled that we will generally refuse to consider arguments raised for the first time on appeal."  Ramirez v. Sec'y, U.S. Dep't of

27

Transp., 686 F.3d 1239, 1249 (11th Cir. 2012). Because the question Beane now raises is a factual one, the District Court did not have the opportunity to address it, and, because no substantial miscarriage of justice would occur by doing so, we exercise our discretion to not consider this issue.[16] In any event, Beane points to no evidence in the record, other than the agent's estimated calculations, showing whether or not the IRS assessed interest on the deficiency. Additionally, it is more than clear that Beane has been aware for a number of years of the IRS's claim to seek payment of this interest. Finally, Beane concedes in his conclusion that whether the IRS ever assessed the interest on the deficiency, or may do so now, is a factual issue best addressed by the Bankruptcy Court on remand.[17]

## III.   CONCLUSION

The Tax Court never reached the issue of Beane's interest owed on the 1998 tax deficiency. The Bankruptcy Court therefore erred in deferring to the Tax Court

---

[16]The government also argues that it need not separately assess interest on an assessed tax liability in order to collect on that interest. The government relies on non-binding district court orders from other circuits for this proposition. See, e.g., United States v. Toyota of Visalia, 772 F. Supp. 481, 488 (E.D. Cal. 1991) ("There is no authority cited by Toyota or of which the court is aware that requires the Internal Revenue Service to make a separate assessment of interest on an assessed tax liability in order to collect that interest."), aff'd sub nom. United States v. Toyota of Visalia, Inc., 988 F.2d 126 (9th Cir. 1993) (unpublished). The district court in that case cited, without explanation, § 6601, which provides: "Interest prescribed under this section on any tax shall be paid upon notice and demand, and shall be assessed, collected, and paid in the same manner as taxes." 26 U.S.C. § 6601(e)(1). An "'assessment,' essentially a bookkeeping notation, is made when the Secretary or his delegate establishes an account against the taxpayer on the tax rolls." Laing v. United States, 423 U.S. 161, 171 n.13, 96 S. Ct. 473, 479 n.13 (1976).

[17]Because we do not rule in favor of Beane, we need not address his request for an order directing the government to pay Beane statutory interest accruing on the money currently being held in escrow by his counsel.

for its calculation of the interest on Beane's underpayment for 1998.  Accordingly, we reverse the decision of the District Court, which affirmed the Bankruptcy Court, and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**